(65 Misc. Rep. 409.)

## In re GILMAN'S ESTATE.

(Surrogate's Court, Sullivan County. December, 1909.)

1. WILLS (§ 182*)—IMPLIED REVOCATION.

A will containing no revocation clause revokes all prior wills, if it is inconsistent with them and disposes of the entire estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 460; Dec. Dig. § 182.*]

2. WILLS (§ 439*)—CONSTRUCTION.

In construing a will the intention of testator should be effectuated.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

3. WILLS (§ 182*)—IMPLIED REVOCATION—EVIDENCE.

A testator by a subsequent will left a legacy of $5,000 to one to whom by a former will he had left $10,000. He omitted a legacy to his wife in the former will; she having died in the meantime, but left legacies to members of her family. Various legatees under the former will who had been testator's employés were omitted from the later one, but one of them was retained as a legatee. Held, that the later will was inconsistent with the former one and disposing of the entire estate impliedly revoked the former will, though it contained no revocation clause and named no executor.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 460; Dec. Dig. § 182.*]

Proceedings for probate of the will of Alfred Gilman. One of two wills admitted to probate.

C. E. & S. M. Cuddeback, for proponent of 1890 will.
Wm. Pinkney Hamilton, Jr., for heirs and next of kin.
George H. Smith, for certain legatees.
George L. Cooke, for certain legatees.
William B. Niven, for Charles H. Gilman.

ROOSA, S. On the 3d day of February, 1909, Alfred Gilman died in the city of New York, being at the time of his death a resident of the county of Sullivan, N. Y. On the 15th day of February, 1909, Charles F. Van Inwegen of the city of Port Jervis, N. Y., filed in the office of the surrogate of the county of Sullivan an instrument purporting to be the last will and testament of Alfred Gilman, deceased, dated March 30, 1890, accompanying which was a petition praying for the probate of said will.

On the 17th day of February, 1909, William P. Hamilton, Jr., as attorney for the heirs and next of kin of the said Alfred Gilman, deceased, also filed a petition in the surrogate's court of the county of Sullivan, praying for the probate of a paper purporting to be the last will and testament of Alfred Gilman, deceased, dated the 31st day of March, 1894. Said will had previously been filed in the surrogate's office; it having been transmitted from the office of the county court of the county of Milwaukee in the State of Wisconsin, in pursuance of an order of the Milwaukee county court, in a proceeding instituted in said court to have said will removed from Wisconsin to the Sullivan county surrogate for probate. To the probate of the will offered

by Charles F. Van Inwegen, dated March 30, 1890, objections were filed by all of the heirs and next of kin of said deceased. To the probate of the will dated March 31, 1894, objections were filed by Charles F. Van Inwegen, the said Van Inwegen being named in the will dated March 30, 1890, as executor. The matter coming on for a hearing before the surrogate, an order was entered on the 12th day of April, 1909, requiring that the proceedings for the probate of said respective papers purporting to be the last wills of said Alfred Gilman, deceased, be consolidated, and that all testimony taken therein be considered as applying to each of said wills.

For the purpose of convenience in referring to these papers, I shall designate them as the will of 1890 and the will of 1894. Both of these instruments appear to be perfect and complete wills, duly executed and regularly attested according to statute. The 1890 will was drawn at Port Jervis, N. Y., on the day it bears date, by Mr. Cuddeback, an attorney standing high in his profession. It was carefully prepared in accordance with the requirements of the statute of this state. The 1894 will was drawn in the city of Milwaukee, Wis., where Mr. Gilman was temporarily sojourning. Mr. Gilman had large real estate holdings in Wisconsin and Michigan, and from the testimony in this proceeding it is evident he had frequent occasion to employ attorneys to look after his many and varied interests there.

The 1894 will was drawn by a Milwaukee attorney who had been retained by Mr. Gilman and who clearly was a most reputable attorney, enjoying a large practice and who, doubtless, was familiar with the statute in reference to the requirements of the drawing of wills. This will of 1894 has no revocation clause. Evidence has been offered by attorneys now practicing at the Wisconsin bar as to the law in Wisconsin, at the date of its execution, in regard to implied revocation; and the Wisconsin statute has also been offered in evidence regarding the statute of wills. Wis. St. 1898, § 2290; Matter of Fisher, 4 Wis. 254, 65 Am. Dec. 309.

With both wills properly established, the next question is whether the will of 1894 revokes the will of 1890. The law on the question of implied revocation is clearly settled in this state, where a will containing no revocation clause revokes all prior wills, if it is inconsistent with them and if it disposes of the entire estate. Does the will of 1894, therefore, dispose of the entire estate of Alfred Gilman, deceased? If it does and if it is inconsistent with the 1890 will, then it follows that the will of 1894 should be admitted to probate, regardless of the fact that there is no revocation clause. In construing testamentary dispositions, the law endeavors to get at the intention of the testator and by a careful and painstaking analysis of the instrument to reach such a conclusion as in the opinion of the court was desired by the testator. It is the duty of the court in the examination of testamentary instruments to give such construction as will effectuate the intention of the testator. Tilden v. Greene, 130 N. Y. 39, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487.

The rule runs through all the law that, where a will has been carefully executed under the solemnity of the statute, courts should closely scan it and not allow a testator's last wishes regarding his property to

be nullified, if from the context his intention can be understood. In Matter of Campbell, 170 N. Y. 84, 62 N. E. 1070, Judge Gray says:

"The object of the statute of wills is to effectuate that which is proved to be the last will of the deceased."

In the Vanderburgh Case, Judge Parker says:

"A will should be so construed as to carry out the intention of the testator unless some positive rule contravenes."

It is insisted on the part of the proponents of the 1890 will that there is no entire inconsistency in the two wills and that both instruments should be allowed probate; that, if a part of the estate of the testator is disposed of and there is no clause of revocation, then the will only revokes a former will in so far as it is inconsistent. It is a revocation pro tanto. It is very clear that Alfred Gilman did not intend to die intestate.

The court in Henderson v. Henderson, 113 N. Y. 16, 20 N. E. 818, says:

"Courts should endeavor by every reasonable intendment, and by a liberal construction, to sustain a testamentary disposition of property when in so doing they give actual and just effect to the testator's purpose."

A will may operate as a revocation of a former testamentary instrument where there is an inconsistent disposition of the previously devised property. 1 Jarman, Wills, 134. It is unnecessary to elaborate further on this legal proposition, or to cite other authorities in support of it.

Now let us look at the conditions existing at the time the 1894 will was executed. The deceased was at that time in St. Joseph's Hospital, Milwaukee, Wis., where he was being treated for some ear trouble. There is no question raised by the evidence but that the deceased was of sound and disposing mind and fully able and competent to dispose of his estate; and it is most natural to imagine that during the time of his enforced stay in the hospital, where he had leisure to consider the large property interests which he owned, the subject of the disposition of the same should be one for him to carefully decide upon. Therefore it was no more than to be expected that, having settled in his own mind how he wished to dispose of his property he should send for his attorneys and have his will legally prepared. Whether Mr. Gilman knew anything about a revocation clause or not is not for us to say, but he had placed the drawing of the will in the hands of a reputable attorney, and, having done so, expected a legal document to be prepared for him to execute. There is nothing in the evidence to show that the 1890 will was referred to in any particular by Mr. Gilman in the preparation of the 1894 will. Four years had passed since the 1890 will was drawn, and many and great changes had taken place. Under the 1890 will the deceased left a legacy of $10,000 to Margaret Kelley. In the 1894 will this legacy was reduced to $5,000. It is very clear that he did not intend to leave her $15,000, but rather to reduce her legacy from $10,000 to $5,000. Again, in the 1890 will he gives to his wife, Mary Gilman, $50,000. In the 1894 will he leaves

nothing to her, for the reason that she had died after the date of the 1890 will, and prior to the execution of the 1894 will.

It is noticeable that, when the second will was drawn, Mary Gilman having died, the deceased left legacies to various members of her family—that is, the Boyd family—further, there are five persons named in the first will, to wit, Andrew Campbell, John Murran, Samuel Johnson, John Lanigan, and Henry Lanigan, who are not referred to in the 1894 will. When the 1890 will was executed, these men were in Mr. Gilman's employ in Forestburgh, this county. In 1894 Mr. Gilman had left Forestburgh, having given up his business there and gone to Milwaukee. His interests were then mainly in Wisconsin and Michigan. When the first will was drawn at Port Jervis, he doubtless had a desire that as faithful employés these men, Campbell, Murran, Johnson, and Lanigan, should receive something from his bounty. If I recall the evidence correctly, he had given all of them sums of money on various occasions, and to Lanigan's memory (who had died subsequently to the 1890 will) he had erected a monument.

It is a noticeable fact that John Calhoun, to whom $1,000 was left in the 1890 will, was also a beneficiary under the 1894 will in the same amount. Clearly the testator did not intend to give Calhoun $2,000; and his selection of Calhoun from those employés, formerly named, would indicate that he thought he was making a new will which would take the place of any prior will, and that Calhoun was the only one of his old employés whom he desired to share in his estate. Furthermore, the 1894 will disposed of his property mainly to those who were of his kin and who would naturally be the objects of his bounty, his three sisters being named as his residuary legatees.

The will of 1894 is therefore inconsistent with the 1890 will, and clearly shows that the intention of the testator was to have it supersede and take the place of the former will. It also provides for the disposition of the entire estate. The fact that the 1894 will names no executor has no bearing whatever on its validity.

In Austin v. Oakes, 117 N. Y. 598, 23 N. E. 197, the court says:

"Where provisions are repugnant, it is our duty to preserve the paramount intention of the testator at the expense even of some subordinate particulars."

See Taggart v. Murray, 53 N. Y. 233. There is no mistaking, after a careful examination of all the evidence and of the will of 1894, that the paramount intention of the testator was to have that will revoke all former wills. It is the duty of courts to guard well the wishes of decedents, and to see that they are faithfully carried out. The authorities cited by counsel have been carefully examined by me, and, after an earnest endeavor to construe these two instruments in order to effectuate the intention of the testator, I have reached the conclusion that the will of 1894 should be admitted to probate, and I deny probate to the 1890 will.

Let a decree be entered accordingly.