(No. 13764.—Judgment affirmed.)

CLARENCE LASIER, Appellant, *vs.* J. JOSEPH WRIGHT, Exr. *et al.* Appellees.

*Opinion filed June 21, 1922—Petition stricken October 10, 1922.*

1. STATUTES—*an adopted statute will be interpreted as construed in State of its origin.* Where a statute of the mother country or of a sister State is adopted in Illinois, with it is also adopted the construction of such statute which obtained in such country or State prior to its adoption in Illinois.

2. WILLS—*when a will is revoked by express declaration.* It is the rule both in law and in equity that where a testator has in a later will used express words in terms revoking the former will or wills such words are to be taken to mean what is expressed and will be operative as a revocation regardless of what disposition of property is made in the later will; but such revocation, to be effective, must be a present and direct revocation and made by a testator of sound mind and memory in a will or writing duly executed as a will is required to be.

3. SAME—*effect of ambulatory character of a will.* One of the most essential and valuable features of a will is its revocable and ambulatory character, and, as a will can have no operation until the death of the testator, a clause providing that the will cannot be revoked will have no effect to prevent revocation prior to the testator's death, and although a will expressly declares that a prior will is revoked, the destruction of the later will will cause the prior instrument to be revived if it is still in existence.

4. SAME—*when second will revokes prior will without express declaration.* A second will or a codicil, duly executed by the testator as his last will and testament, will revoke a prior will without express terms declaring the same revoked where the provisions of the second instrument are so inconsistent with the prior will that both cannot stand, as the testator by the inconsistent provisions has, within the meaning of the statute, declared a revocation of his former will. (Contrary expressions in *Stetson* v. *Stetson,* 200 Ill. 601, and *Limbach* v. *Limbach,* 290 id. 94, overruled.)

5. SAME—*distinction between a second will and a codicil as to revocation.* The rules for the construction of a will and a codicil are not the same as in construing the provisions of two different wills by the same testator in order to determine whether or not there is a revocation by implication, as the codicil is to be regarded as a part of the prior will and every clause of the codicil and of the will is part of one and the same instrument and should be harmonized, if possible.

6. WORDS AND PHRASES—*meaning of the word "declare."* The word "declare" means primarily to make known, to make manifest, to make clear, to present in such a manner as to exemplify, to disclose or to reveal.

DUNN and CARTWRIGHT, JJ., dissenting.

APPEAL from the Circuit Court of Kane county; the Hon. C. F. IRWIN, Judge, presiding.

CHARLES S. CUTTING, CHARLES S. DENEEN, and ROBERT S. EGAN, for appellant.

R. W. CLIFFORD, and COOKE, SULLIVAN & RICKS, (GEORGE A. COOKE, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On March 7, 1887, Charles H. Haines, a bachelor, executed a will giving all of his property to his mother, Harriet S. Haines, absolutely and without qualification, and nominating an executor. The will contained no further provision. On January 13, 1907, he executed another will declaring it to be his last will, whereby, after the direction of the payment of his debts, he gave the net income of all of his estate to his mother, to be paid to her by his executor

during her natural life. He gave thereby a legacy of $10,-
000 to each of two other persons, and devised certain real
estate, after his mother's death, to another person, and the
residue of his estate he gave, two-thirds to the Mercy Hos-
pital of Chicago and one-third to the trustees of school dis-
trict No. 87 in the township of St. Charles, in Kane county.
J. Joseph Wright was nominated as executor, and the will
contained no other provisions except with reference to the
powers and duties of the executor and the trustees of the
school district. It contained no express declaration revok-
ing the previous will and did not mention or in any way
refer to or in any manner indicate that the testator had ever
executed a previous will. The testator died June 24, 1914,
leaving no widow or descendants, and his mother was his
only heir. She died after having executed a will on Janu-
ary 12, 1915, which was admitted to probate May 4, 1915.
By her will she gave some personal legacies and made direc-
tions of minor importance and bequeathed the residue of
her estate to the board of education of St. Charles. Her
known heirs were a niece and several grand-nephews and
grand-nieces, none of whom took anything under her will.
A bill was filed to contest her will, which is still pending in
the circuit court of Kane county. The estate of Charles H.
Haines consisted of real and personal property of the value
of more than $500,000. After his death the will of 1907
was admitted to probate on September 8, 1914, in the pro-
bate court of Kane county, and letters testamentary were
issued to J. Joseph Wright, the executor named in the will.
A settlement of the estate is still pending in the probate
court. All claims against the estate except two or three
items have been paid and all legacies except one of $10,000.
The executor filed his final report, but before it was heard
the will of 1887 was produced. A petition for the partition
of the land of Haines was filed in the superior court of
Cook county, and a decree was entered confirming the title
in the Mercy Hospital and the board of education and for

partition as prayed, which was affirmed by this court in 281 Ill. 582. Under this decree the lots in Chicago were sold for $100,000 and the lots in St. Charles for $40,000. The will of 1887 was discovered among the testator's papers after his death by Wright, the executor named in the will of 1907, and his attorney, John S. Huey, before the probate of the latter will, but its existence was not made known at that time to any of the other persons interested. It was preserved by Wright and kept in a safety deposit box in Chicago until February 19, 1920, when the case of *Limbach* v. *Limbach*, 290 Ill. 94, then recently decided, came to the attention of Huey, who then thought that the persons interested should know of the earlier will, and he informed them of its existence. The next day the will of 1887, together with a petition for its probate by Genevieve G. White, Clarence Lasier and Josephine Lasier, who were, respectively, a niece and grand-nephew and grand-niece of Harriet S. Haines and were three of her heirs and of the next of kin of Charles H. Haines, was filed in the probate court of Kane county. The petition was heard and denied, and Clarence Lasier appealed to the circuit court of Kane county and there filed a supplemental bill setting up the admission of the will of 1907 to probate and the proceedings under that will for the settlement of the estate, praying for the vacation of the order admitting that will to probate and for the admission of the will of 1887 to probate as the last will and testament of the testator. The circuit court heard the cause, denied the petition to vacate the order admitting the will of 1907 to probate and denied probate of the will of 1887. Clarence Lasier has appealed from this decree.

There was no question raised either in the county or circuit court as to the legal competency of the testator to make either will at the times they were executed, and there was no question of undue influence or of the due observation of every formal requirement of law in the execution of the same. The sole question was whether the later will

revoked the earlier will. Other questions have been raised in this court by appellees, but we do not consider it necessary to consider those questions in our decision of the case. Simply and plainly stated, the sole question for our consideration is, Does the second will, which makes a complete and entirely different disposition of all of the testator's property from that made by the first will and without the employment of any express words revoking the first will, constitute, of itself, a sufficient revocation of the first will under our present statute on wills?

From the facts appearing in the record both wills were retained and preserved by the testator without change or mutilation of any kind and no other will was ever made by the testator, so far as the record shows. It appears that it was a habit of the testator to preserve most all papers of every character executed by him, including even canceled checks that he had drawn on his banks. Although not material in this case, his habit of preserving papers may account for the fact that the first will was preserved and retained by him. At any rate, the two wills remain as the only evidence as to his wishes concerning the disposition of his property after his death. It cannot be, and is not, questioned that the later will disposes of all of his property and in an entirely different manner from that made by the former will. Both of these wills cannot stand together as his last will and testament, and that is conceded. One or the other of these wills must dispose of his property, and the claim of appellant is that the first will, under our statute, must be taken as his last will and testament, because the second will contains no express words referring to the first will or to former wills declaring the same to be revoked. It is the claim of appellees that the second will does declare a revocation of all former wills within the meaning of our statute, although there are no words in the second will that refer to the first or any former will or that in express terms declare a revocation of the same.

The common law of England, and all statutes of parliament in aid thereof prior to the fourth year of King James I, except certain specified statutes, has been in force in this State ever since, and even before, its organization as a State, except as it has been modified or repealed by the legislative authority. It was thus adopted at the first session of the legislature of the State and has remained in force ever since, except as aforesaid. (Laws of 1819, p. 3; Hurd's Stat. 1921, chap. 28.) The fourth year of James I began March 24, 1606. The English Statute of Frauds, properly speaking, is Stat. Car. II, chap. 3, and was enacted in that country in 1677. (25 R. C. L. 433.) The sixth section of that statute provides as follows: "No devise in writing of lands, tenements or hereditaments, nor any clause thereof, shall at any time after the said four-and-twentieth day of June be revocable otherwise than by some other will or codicil in writing or other writing declaring the same, or by burning, canceling, tearing or obliterating the same by the testator himself, or in his presence and by his directions and consent; but all devises and bequests of lands and tenements shall remain and continue in force until the same be burnt, canceled, torn or obliterated by the testator or his directions, in manner aforesaid, or unless the same be altered by some other will or codicil in writing, or other writing, of the devisor, signed in the presence of three or four witnesses, declaring the same, any former law or usage to the contrary notwithstanding." Section 22 of the same statute pertained to the repeal or revocation of wills concerning goods and chattels or personal estate, but is so different from section 6 that it can have no possible bearing upon the issue in this case. It is necessary, however, to bear this difference in mind in the consideration of the English cases decided under the Statute of Frauds in order to have a correct understanding of those decisions bearing upon the question of revocation of wills by later wills. These two sections will be found under note 8 on page 273

of Page on Wills. In 1837 all distinction as to the manner of the revocation of wills as to real estate and as to personal property was done away with by the enactment of Stat. 1 Victoria, chap. 26. Section 20 of that act provides "that no will or codicil, or any part thereof, shall be revoked otherwise than * * * by another will or codicil executed in manner hereinbefore required, or by some writing declaring an intention to revoke the same and executed in the manner in which a will is hereinbefore required to be executed, or by the burning, tearing or otherwise destroying the same by the testator, or by some person in his presence and by his direction, with the intention of revoking the same."

The legislature of Illinois adopted substantially the sixth section of the English Statute of Frauds in 1829, and the provisions then adopted have remained the law of Illinois ever since. It is section 17 of our present act on wills, and provides as follows: "No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law."

A substantial difference between the Illinois act and the sixth section of the English Statute of Frauds is that the latter statute applies to devises of lands, tenements or hereditaments, while the Illinois statute applies to devises of lands and all bequests of personal property. In other words, the Illinois act applies to all wills, testaments and codicils, as does section 20 of the English Wills act. Another substantial difference is that the Illinois statute does not provide for the revocation of a will by "other writing

declaring the same." Our section on revocation expresses
the entire law upon the subject of the manner in which a
former will may be revoked by a subsequent will, testament
or codicil, and the settlement of the question now before
us depends solely and only upon the correct interpretation
of that section in so far as it bears upon the question. As
this particular provision of our statute was taken from the
English Statute of Frauds, the interpretation placed upon
the same provision in that statute should have great weight
in the settling of the question now before us. The rule
is, that where a statute of the mother country or of a sis-
ter State is adopted into our law, with it is also adopted
the construction of such statute which prior to its adoption
uniformly obtained. *Tyler* v. *Tyler*, 19 Ill. 151; 2 Lewis'
Sutherland on Stat. Const.

Under the common law, oral wills made *in extremis*
were constantly admitted by the courts of England for the
purpose of revoking prior written wills, and great frauds
were perpetrated by bringing into court witnesses to prove
pretended nuncupative wills. The Statute of Wills in force
previous to the Statute of Frauds contained no provision
on the subject of revocation. The courts during a long
course of years had practically builded up a set of rules
partly based on the ecclesiastical law and partly by pure
judicial legislation. These rules had for their general foun-
dation the theory that the intention of the testator to re-
voke should be given effect by the court and that the form
of the revocatory act was immaterial. It was accordingly
held that the declaration of a testator that he regarded his
will as revoked was a sufficient and effective revocation.
(Page on Wills, sec. 244.) Such liberal holding as to the
making and revocation of wills naturally led to the per-
petration of great frauds by the proving of fictitious oral
wills or by false proof of the revocation of wills. In the
celebrated case of *Matthews* v. *Warner*, 4 Ves. Jr. 186,
nine witnesses perjured themselves and the pretended devi-

see was proven to be guilty of subornation of perjury. In that case Lord Nottingham said: "I hope to see one day a law that no written will shall be revoked but by writing." It has been stated by law writers that the developments in that case led to the enactment of the sixth section of the Statute of Frauds. Since the enactment of the Statute of Frauds and the Wills act in England the revocation of wills therein specified is governed by the provisions of those acts. The doctrine of revocation of a former will merely by the making of a later will inconsistent with the former will prevailed at common law before the enactment of the Statute of Frauds. The prime incentive that led to the enactment of the Statute of Frauds was to put in force a statutory provision that would require all evidence of a revocation by a testator to be evidenced by a writing duly signed and duly witnessed by at least three disinterested persons, so that rank and wholesale perjury could no longer play so important a part in the establishment and revocation of wills. It was not intended to abolish the doctrine established by the English courts that a former written will could be revoked by a subsequent written will entirely inconsistent with such former will without the use of specific words which in express terms declared such revocation, and it has never been held by any English court of last resort, so far as we have been able to discover after great research, that a later will entirely inconsistent with a former will does not revoke such former will in so far as they are inconsistent with each other.

Upon the question of revocation of a former will by a later will the English courts established, and have universally followed, two rules of construction which have never been departed from by those courts so far as we have been able to ascertain, and both rules prevailed before and since the enactment of the English Statute of Frauds and the English Wills act of 1837. The first rule is, that where the testator has in the later will used express words in terms

revoking the former will or wills such words are to be taken
to mean what he has expressed, and that such words will
be operative although the later will contained no inconsistent
disposition of the property. This rule is the rule both at
law and in equity. (*Burton* v. *Gowell,* Cro. Eliz. pt. 1, 306;
*Cranvell* v. *Sanders,* Cro. Jac. 497; *Powell* v. *Mouchett,*
6 Madd. & G. 216; *Goods of Meredith,* 29 L. J. Prob.
(N. S.) 155; 1 Jarman on Wills,—5th ed.—171.) Such
a revocation, to be effective, must be a present and direct
revocation and made by a testator of sound mind and mem-
ory in a will or writing duly executed as a will is required
to be. This rule appears to be also the rule of the courts
of this country. *In re Thompson,* 11 Paige, 453; *Smith*
v. *McChesney,* 15 N. J. Eq. 359; *Nelson's Estate,* 147 Pa.
160; *James* v. *Marvin,* 3 Conn. 576; *Colvin* v. *Warford,*
20 Md. 357; *Price* v. *Maxwell,* 28 Pa. 23; *Boudinot* v.
*Bradford,* 2 Dall. 266; *Burns* v. *Travis,* 117 Ind. 45; *Hair-
ston* v. *Hairston,* 30 Miss. 276.

The second rule of construction by the English courts
is, that the last will is a revocation of all former' wills
in so far as it is inconsistent with such former wills al-
though such last will may have no express words of revo-
cation. This rule is a rule of the common law courts and
also of the ecclesiastical courts, and it was never departed
from after the enactment of the Statute of Frauds and the
English Wills act of 1837. (*Helyar* v. *Helyar,* (1754)
1 Lee's Ecc. Rep. 472, 161 Eng. Rep. 174; *Ex parte Hel-
lier,* (1754) 3 Atk. 798; *Seymour* v. *Northworthy,* (1838)
Hardres, 374, 145 Eng. Rep. 504; *Plenty* v. *West,* (1845)
6 C. B. 201, 1 Roberts. Eccl. 264; *Moorhouse* v. *Lord,*
(1863) 8 L. T. (N. S.) 212; *Baker* v. *Story,* (1874) 31 id.
631; *Dempsey* v. *Lawson,* (1877) 36 id. 515; *Goods of
Hodgkinson,* (1893) 69 id. 540; *Cadell* v. *Wilcocks,* (1897)
78 id. 83; *Estate of Bryan,* (1907) L. R. Prob. Div. 125.)
Such revocation by a later inconsistent will is generally re-
ferred to in the English authorities as a revocation by im-

plication. It is frequently stated in the English cases that if it can be collected from the words of the testator in the later instrument that it was his intention to dispose of his property in a different manner to that in which he disposed of it by an earlier document or documents the earlier documents will be revoked, and that this is so although the later will does not dispose of the whole property of the deceased and contains no express clause of revocation. Inconsistent parts of the later will revoke the former will bearing on such parts, and where the later will does not dispose of all of the property and the former will or wills contain dispositions of the testator's property not disposed of by the later will, then in such case all of the wills may be probated together as the testator's will in so far as they are not inconsistent with each other and where the later will contains no specific words revoking in terms the former wills. Where the later will contains no specific words revoking the former wills and contains a declaration that it is his last will and testament, this declaration will not be decisive in determining whether or not the later will revokes the former wills. Some of the cases specifically hold that the use of the words, "my last will and testament," ought not to receive any weight at all in deciding whether there is, in fact, a revocation, which fact is to be determined by the real intent of the testator after considering the entire will. (*Stoddard* v. *Grant,* 1 Macq. H. L. Cas. 163.) Other cases hold that such words, although not equivalent to saying "my only will," are evidence of an intention to revoke former wills, but will not be allowed to have such effect if a consideration of the whole will shows a different intention. *Plenty* v. *West,* 16 Beav. 173, 17 Jur. 9, 22 L. J. C. H. (N. S.) 185, 1 Weekly Rep. 3; *Cutto* v. *Gilbert,* 9 Moore P. C. 131, 1 Spinks' Eccl. & Adm. Rep. 417.

It will be observed from the foregoing English cases that the rule that a later inconsistent will revokes former wills prevailed not only at common law but also under the pro-

visions of section 6 of the Statute of Frauds and of section 20 of the Wills act of 1837. In *Moorhouse* v. *Lord, supra,* in 1863 Lord Chelmsford laid down the rule as absolutely settled that if a subsequent will is inconsistent with a prior will the prior will is revoked although there is no clause in the later will expressly revoking the former. In *Baker* v. *Story, supra,* Sir George Jessel said: "I do not think the Wills act [of 1837] has altered the law as to the revocation of wills at all, so far as this case goes. All that the act says is that you shall not revoke one will by a subsequent will or writing except the subsequent will or writing be executed in a particular way. It leaves the law as to the operation of the provisions of the second will just the same as it was before. In the present case we have two wills, both properly executed. The second will contains a gift to charity, and this gift is so inconsistent with the first will that it revokes it." This decision was made in 1874, and the second will contained no clause expressly revoking the former will. There is, however, a distinct difference in the effect of a revocation under the two acts. Prior to the English Wills act referred to, the common law rule that the destruction of the second or revoking will revived the former will prevailed. Under section 22 of the Wills act no will or codicil, or any part thereof, which shall be in any manner revoked, shall be revived otherwise than by the re-execution thereof or by a codicil executed in the manner therein required and showing an intention to revive the same. Accordingly it was held in the case of *Goods of Hodgkinson, supra,* that where an inconsistent clause in the second will revoked a clause in the first will, by reason of such inconsistency the former will was revoked although the second will was destroyed. The English Wills act is set out in full, together with the amended acts of 1852 and 1861, in 3 Alexander on Wills, beginning at page 2615.

Seventeen States in this country, besides Illinois, have adopted substantially the sixth section of the English Stat-

ute of Frauds with reference to the revocation of former
wills by subsequent wills, and some of those States have
adopted also the provision of that section that former wills
may be revoked by other written instruments duly executed
as wills are required to be executed. We have searched for
decisions by the courts of those States and have found no
decision that is not in complete accord with the English
decisions under the Statute of Frauds, that a former will
is revoked by a subsequent will inconsistent with such for-
mer will. The following decisions rendered in such States
hold to said rule absolutely: *Clarke* v. *Ransom,* 50 Cal. 595;
*Colvin* v. *Warford,* 20 Md. 357; *Gardner* v. *McNeal,* 117
id. 27; *Smith* v. *McChesney,* 15 N. J. Eq. 359; *In re Gill-
man's Estate,* 121 N. Y. Supp. 909; *In re Venable's Will,*
127 N. C. 344; *In re Burke's Estate,* 66 Ore. 252; *In re
Gensimore's Estate,* 246 Pa. 216; *Whitney* v. *Hanington,*
36 Colo. 407.

In *Clarke* v. *Ransom, supra,* the testatrix executed two
wills of different dates, giving her property to different
persons in each will. The second will contained no words
of revocation. The court in its decision said: "But it is
urged in argument that under section 1292 of the civil code
and section 1970 of the code of civil procedure this instru-
ment is inoperative to change, modify or revoke, *pro tanto,*
the former will. As these sections stand they are identi-
cal in legal effect, and provide that a written will cannot
be revoked or altered, in whole or in part, except 'by a
written will or other writing of the testator declaring such
revocation or alteration and executed by such testator.'
The instrument propounded, being wholly in the hand-
writing of the testatrix, was executed with the requisite for-
malities but does not on its face declare that it was there-
by intended to revoke or alter the former will; nor was
it necessary that it should. The words 'declaring such revo-
cation or alteration,' as employed in the statute, mean noth-
ing more than that it shall appear from the provisions of

the last will that it was intended to alter or revoke the former in whole or in part."

In *Gardner* v. *McNeal, supra,* the material facts are that in 1899 the testatrix by her will gave all of her property to her husband. In 1905 she executed another will leaving all of her property to other relatives. Upon the question whether the second will revoked the first will the court said: "The statute in regard to the revocation of wills (Code, art. 93, sec. 318,) provides, in substance, that 'no will * * * shall be revocable otherwise than by some other will or codicil in writing or other writing declaring the same, * * * unless the same be altered by some other will or codicil in writing or other writing of the devisor, signed, as hereinbefore said, in the presence of two or more witnesses declaring the same.' It is true, the instrument executed in 1905 with all of the formal requisites to constitute it a will under all the requirements of the law, did not, in terms, revoke the will of 1899. But this is not necessary. A will may be just as effectively revoked by an inconsistent disposition of previously devised property. * * * By the will of 1899 Mrs. Gardner had given her entire estate, of every description, to her husband. By the second instrument she gave all her railroad stock and all her money in bank except $300 (which was bequeathed to Mary Finnegan) to her brother and certain articles of personal jewelry to named friends. It appears from the agreed statement of facts that this comprised her entire estate at the time, with the exception of a few pieces of furniture and some minor articles of personal adornment. The second paper evidently intended to make a complete disposition of her property no less than the first, and, the legatees being entirely different persons, the inconsistency was as great as was possible. But one conclusion can be reached: the will of 1899 was revoked by that of 1905, and was therefore without force or effect at the time of her death."

The two cases just quoted from are very strong cases in favor of the doctrine already announced, and they were based on statutes equally as plain and positive as our own that no former will may be revoked otherwise than by a subsequent will, testament or codicil, duly executed, declaring the same. Both the California code and the Maryland code adopted the sixth section of the Statute of Frauds in full as to the revocation of a former will by a second will, and they adopted the same construction of their code as those of the English courts on the construction of the Statute of Frauds.

Four States of this country have adopted substantially section 20 of the English Statute of Wills of 1837, and the decisions of those four States are in entire harmony with the decisions of the above noted States and with the English decisions on the question of a later will that is inconsistent with a former will revoking such former will. (*Deppen's Trustee* v. *Deppen,* 132 Ky. 755; *Reese* v. *Probate Court of Newport,* 9 R. I. 434; *Smith* v. *Houseman,* 90 Va. 816; *Carpenter* v. *Miller,* (W. Va.) 100 Am. Dec. 744.) Twenty-one of the rest of the States of this country have adopted statutes which in substance provide that former wills may be revoked by the due execution of a subsequent will and without any provision that the subsequent will must declare an intention to revoke. Decisions under such statutes are not in point on the question now before us and no reference will be made to them.

All text books and other such authorities touching on the subject of wills, so far as we have examined, state the rule that a later will revokes a former will without the use of words of express revocation when the later will is inconsistent with the former, and without citing a single decision to the contrary. Page on Wills, sec. 269; 1 Alexander on Wills, sec. 526; 1 Underhill on Wills, sec. 251; 4 Kent's Com. 557; Redfield on Wills, (3d ed.) chap. 7, sec. 5; Swinburne, pt. 7, sec. 14; 1 Jarman on Wills,

(6th ed.) chap. 7, sec. 17; Thompson on Wills, sec. 462; 40 Cyc. 1175; 28 R. C. L. sec. 132; 30 Am. & Eng. Ency. of Law, 626; *Cheever* v. *North*, 37 L. R. A. 565, note; Powell on Devises, (3d ed.) 541; 1 Schouler on Wills, (5th ed.) sec. 406; *Succession of Lefort*, Ann. Cas. (1917E) note 781.

The real question before us, whether or not a former will is revoked by a later and perfectly executed will by a testator of sound mind disposing of all his property in a manner entirely inconsistent with such former will and without expressly revoking it, and where both wills are preserved by the testator, has never been passed on by this court when actually presented for decision. In *Stetson* v. *Stetson*, 200 Ill. 601, the main question for decision was whether or not the destruction of a later will by a testator declaring all former wills revoked revived the former will. In deciding this question we held to the common law rule that the former will was revived. This decision is based upon the ambulatory character of a will, which can have no operation until the death of the testator, and if it has no existence at his death, in the absence of a positive statute all declarations in a destroyed will are themselves revoked and have no force. But in deciding that case this court used the following language, which must be regarded as mere dictum: "By the terms of this statute [sec. 17 of our Wills act] the subsequent will which shall have the effect of revoking a former will must be a will 'declaring the same,'—that is to say, must be a will which upon its face and by its terms declares a revocation. If the will must expressly contain a clause revoking all former wills, the question as to any inconsistency between the provisions of the later will and the former will is immaterial." Again, in the case of *Limbach* v. *Limbach, supra,* the question for consideration was whether or not a former written will of the testator, duly executed in 1912, was revoked by a nuncupative will made in 1916, which contained no express words declaring the

304–10

former will revoked. It was held that the later will did not revoke the former will, and rightly so, because under section 17 of our Wills act it is expressly provided that no words spoken shall revoke or annul any will, testament or codicil in writing, executed in due form of law. It is also expressly provided in that section that no will, testament or codicil shall be revoked by the testator by another will, testament or codicil unless signed by the testator or testatrix in the presence of two or more witnesses and by them attested in his or her presence. The decision in the *Limbach case,* however, was placed upon the ground that the nuncupative will contained no express declaration revoking the former will, and, referring to the case of *Stetson* v. *Stetson, supra,* we further said that the rule that a revocation by implication resulted from a subsequent will with provisions inconsistent with the former will had resulted from a consideration of statutes having their basis in the English Statute of Frauds, but that such doctrine should not be maintained in the face of section 17 of our statute. We further said that by the terms of said section a subsequent will which shall have the effect of revoking a former will must be a will "declaring the same,"—that is to say, must be a will which upon its face and by its terms declares a revocation; and if a will must expressly contain a clause revoking all former wills, the question as to any inconsistency between the provisions of the later will and the former will is immaterial. There can be no question as to the meaning of the language used in the *Limbach case* and of that quoted or referred to therein from the *Stetson case,* but in making such a holding or declaration we are now convinced we erred. These two decisions overlooked the fact that the provisions of section 17 of our Wills act, so far as it goes, are taken literally from the sixth section of the English Statute of Frauds, and that the decisions of the English courts in construing that statute expressly and uniformly hold that a later will containing inconsistent or re-

pugnant provisions revokes a former will wholly or in part by implication, and that the other States of this country whose courts have followed the English courts have statutes similar to our own, taken literally from the English Statute of Frauds.

It has been the rule of this court to adopt the decisions of the English courts in laying down the rules of the common law so far as they are applicable to conditions and usages in this country and also in construing statutes taken from the mother country. It will be seen by referring to the case of *Stetson* v. *Stetson, supra,* that we adhere to the common law doctrine of the English courts that a later will revoking a former will is itself revoked by its destruction by the testator and that such destruction revives the former revoked will, while in the same case we inadvertently laid down the rule that under our statute, taken from the English Statute of Frauds, a later inconsistent will does not revoke a former will without a positive declaration in the later will that the former will is revoked,—and this in the face of the English decisions holding to the contrary. This court in repeated decisions in other cases has held, under the common law doctrine, that a will may be revoked by implication and without any words in express terms declaring such revocation. *Tyler* v. *Tyler, supra; Phillippe* v. *Clevenger,* 239 Ill. 117; *Ford* v. *Greenawalt,* 292 id. 121.

In the case of *Phillippe* v. *Clevenger, supra,* after thoroughly considering the provisions of section 17 of our Wills act, we held that the common law doctrine of the revocation of wills by implication was not repealed by that section. We also there said: "Section 6 of the English Statute of Frauds, (8 Pickering's Stat. at Large, p. 406,) which is, in substance, the same as section 17 of the Wills act in force in this State, was in force in England at the time the rule was established in that country that a will, or a part thereof, could be revoked by implication. We are there-

fore forced to the conclusion that the doctrine of the revocation of a will, or a part thereof, by implication, is not abrogated by statute in this State." We accordingly held in that case that a provision of a will devising land was revoked by implication by a conveyance of the land during the testator's lifetime, and that it was not devised when the testator subsequently re-acquired the title to such land, where the will was not re-published in the manner provided by the statute for the execution of wills.

In accordance with the English doctrine of the revocation of wills by subsequent wills or codicils by implication, this court has frequently held that a codicil duly executed by a testator will revoke his former will by implication, and without any express terms in the codicil declaring the same revoked, where the provision in the codicil is so inconsistent with the provision in the will that both provisions cannot stand. (*Meckel* v. *Johnson,* 231 Ill. 540; *Wardner* v. *Baptist Memorial Board,* 232 id. 606; *Terhune* v. *Commercial Safe Deposit Co.* 245 id. 622; *Alford* v. *Bennett,* 279 id. 375; *Pratt* v. *Skiff,* 289 id. 268; *Abdill* v. *Abdill,* 295 id. 40.) The rules for the construction of a will and a codicil are not exactly the same as those for construing the provisions of two different wills by the same testator in order to determine whether or not there is a revocation by implication. This is so simply because the codicil is to be regarded as a part and parcel of the will and that every clause of the codicil and of the will is part of one and the same will, and they are to be harmonized, if possible. But under section 17 of our statute on wills the identical provision that a subsequent will to revoke a former will must declare such a revocation is also applied to codicils,—that is to say, a subsequent codicil to revoke a will must declare such revocation. It is absolutely inconsistent to hold under said section that a later will does not revoke a former will by implication in so far as it is entirely inconsistent with the former will, and to also hold that a codicil entirely in-

consistent with the will does revoke the will by implication. It is clear that our own decisions upon this subject are not harmonious.

One of the most essential and valuable features of a will is its revocable and ambulatory character, which the law ·has at all times recognized. It has even been held that a clause of a will providing that it is not to be revoked has no effect whatever in preventing revocation. (*Wilkes* v. *Burns*, 60 Md. 64.) It has been the law of wills for centuries that a man's last will in point of time, duly executed and inconsistent with all former wills, is his only will. The English author, Swinburne, long ago said: "No man can die with two testaments, and therefore the last and newest is in force, so that if there were a thousand testaments the last of all is the best of all and makes void the former." We believe that there is no authority or any other court, English or American, that has laid down the rule that the latest will of a testator that disposes of all of his property in a manner entirely inconsistent with all former wills, and which is duly executed according to law and by a testator capable of making a will, does not revoke all former wills of such testator even though the will contains no clause in terms revoking the former wills,—and this is true in all jurisdictions where the sixth section of the English Statute of Frauds, or the substance thereof, is in force.

We have reviewed the authorities extensively and have extended this opinion to too great a length in citing and commenting on the authorities applicable to this case because of the importance of the question and of the able briefs and arguments of both counsel filed in this case in which they have earnestly contended for their respective positions, and because of the further fact that our own decisions bearing upon the question appear to be out of harmony with all the other courts of last resort who have considered the same. We are thoroughly convinced that the testator in this case meant that his will of 1907 was his only

will when he declared it his last will and in which every disposition of his property is absolutely inconsistent with the former will of 1887, and that there is no provision of our statute that requires us to declare otherwise by reason of the fact that there is no express declaration in it in terms saying that it is his only will or declaring that all former wills are revoked. When a testator makes a will absolutely inconsistent with all other wills and declares it his last will and testament, such acts of necessity amount to a declaration that all former wills are revoked. The word "declare," as defined by the lexicographers, means primarily to make known; to make manifest; to make clear; to present in such a manner as to exemplify; to disclose; to reveal. The testator in this case, within the meaning of the statute, has declared a revocation of his former will by impliedly saying in every clause thereof that the will he was then executing was his will and his complete and only will. It was not necessary to use express words in terms declaring such revocation. The statute makes no such requirement.

The judgment of the circuit court denying the petition to vacate the order admitting the will of 1907 to probate and denying probate of the will of 1887 is affirmed.

*Judgment affirmed.*

DUNN and CARTWRIGHT, JJ., dissenting:

The question here is entirely one of statutory construction. "The power to dispose of property by will is neither a natural nor a constitutional right but depends wholly upon statute, and may be conferred, taken away or limited and regulated, in whole or in part, by the legislature." (*Brettun* v. *Fox,* 100 Mass. 234.) Descent of property, whether by inheritance or devise, is regulated in this State by statute. (*Kochersperger* v. *Drake,* 167 Ill. 122.) Before the organization of the State, territorial legislation had adopted the common law of England and all statutes of parliament in aid thereof prior to the fourth year of King James I.,

except certain specified statutes, as the rule of decision until repealed by legislative authority. At its first session the State legislature adopted the same enactment, (Laws of 1819, p. 3,) which has ever since remained in force and is now chapter 28 of the Revised Statutes. At the same session "An act to regulate administrations and the descent of intestate's estates and for other purposes" was passed, (Laws of 1819, p. 223,) which authorized devises and bequests of estates by will and directed the manner of the execution, attestation and probate of wills. The only provision in this act in regard to the revocation of wills was contained in the proviso to section 14, "that no words spoken shall revoke or annul any will or codicil in writing, executed in due form of law." The English Statute of Wills, which was adopted as the law of this State by the first of the acts which have been mentioned, contained no provisions on the subject of revocation, and since it was thought that the intention of the testator to revoke, in whatever form manifested, should be given effect, it was held by the courts that his declaration that he regarded his will as revoked should be sufficient to effect a revocation. (Cruise's Dig. 77, title 38, chap. 6, sec. 2; *Burton* v. *Gowell*, Cro. Eliz. (pt. 1,) 306; *Matthews* v. *Warner*, 4 Ves. Jr. 186, and note citing *Cole* v. *Mordaunt*, 22d of May, 28 Charles II.) Under the proviso of section 14 of the act of 1819, the manner of revocation was limited so as to exclude the means of spoken words. The manner of revocation was still further limited by "An act relative to wills and testaments, executors and administrators, and the settlement of estates," adopted by the sixth General Assembly, which repealed certain previous acts, and, revising the law in regard to wills, provided for the making of wills, the inheritance and descent of the property of persons dying intestate and the settlement and distribution of estates, whether testate or intestate. (Laws of 1829, p. 191.)

The effect of this legislation was to repeal the rules of the common law in respect to wills and the descent of property so far as those rules were not consistent with the statutory provisions. While the common law of England is in force as a part of the statutory law of this State by virtue of the statute of 1819 first mentioned, the statute must prevail over the common law rule in every case in which the statute has declared a rule. Section 14 of the act of 1829 has ever since remained in force. It is section 17 of the present act in regard to wills and reads as follows: "No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in.his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil. in writing, executed as aforesaid, in due form of law." No part of the English Statute of Frauds was adopted by the act of 1919, which declared the common law of England and statutes in aid thereof to be the rule of decision in this State, because the Statute of Frauds was not enacted in England until 1677,—many years after the fourth year of James I, which began on March 24, 1606. Section 14 of the act of 1829 is in substance the same as section 6 of the English Statute of Frauds, (29 Car. II, chap. 3,) except that section 14 applies to all gifts by will, while section 6 of the English act applies only to devises of real estate, and also omits the words "or other writing" as a means by which a will may be revoked. Section 14 recognizes five methods by which a testator may revoke his will and provides that no will shall be revoked in any other way. It has nothing to do with revocations by implication or operation of law. The present case is concerned with only one of the methods mentioned in section 17. This will was not burned, canceled,

torn or obliterated. Having been executed in compliance with all the requirements of the statute and the proof required by law having been made, it was entitled to probate as the will of the testator unless he had revoked it in the only other method recognized by the statute,—that is, by another will or codicil in writing declaring such revocation. "It is the rule that a valid will once existing must continue in force unless revoked in the mode prescribed by statute." (*Wolf* v. *Bollinger*, 62 Ill. 368.) The whole case in the end depends upon the meaning of the phrase in the statute, "declaring the same."

The interpretation of the meaning of the above phrase in the statute in question has received the consideration of the court in three cases, the first of which is *Stetson* v. *Stetson*, 200 Ill. 601, in which it was claimed that the will of the testator which was admitted to probate was revoked by a subsequent will containing an express clause of revocation. This second will was not found after the testator's death and was not probated, but a bill to set aside the probate of the first will was filed and evidence was produced tending to show the execution of the second will and that it contained a clause of revocation. It was contended that if the second will contained a clause of revocation the execution of the second will at once revoked the first, and that the loss of the second will or its destruction by the testator did not revive the first. After quoting section 17 of the Statute of Wills, it was said that by its terms the subsequent will which will revoke a former will "must be a will 'declaring the same,'— that is to say, must be a will which upon its face and by its terms declares a revocation." This construction was followed in *Moore* v. *Rowlett*, 269 Ill. 88, and the language quoted from section 17 was stated to be clear, plain and unambiguous and to mean what it plainly says, as was held in the *Stetson case*. Although it is said that the question was not an actual issue and was unnecessary in the decision of those cases, and that the language of the court in construing

the expression "declaring the same" must be regarded as mere dictum, still it is true that the court was required in each of the cases to construe section 17, and even though it went somewhat beyond what was absolutely necessary to the decision of the cases, it is apparent that the conclusion was deliberately reached and declared, and that the rule announced ought not to be disturbed except upon a conviction by reason or authority that it is erroneous. In *Limbach* v. *Limbach,* 290 Ill. 94, the decision of the case rests upon the proposition that a will is not revoked by a subsequent will which does not expressly declare such revocation. The supposed will in that case, which disposed of personal property only, was nuncupative, and the contention was made that such a will could not revoke a prior written will because of the prohibition by the statute of the revocation of a will in writing by words spoken, but it was stated in the opinion that the question was not involved because the testator did not by his nuncupative will declare any revocation. If the court had regarded the question whether a written will could be revoked by a nuncupative will when reduced to writing as being involved it would no doubt have decided it, but it did not, and did decide, following the earlier decisions, that a revocation of a will could be made by a later will only where the latter instrument expressly declaring the same contained an express clause revoking the former will,— and this is the sole point upon which that decision rests. In the opinion of the court it is said that these former decisions overlooked the fact that the provisions of section 17 of our Wills act, so far as it goes, are taken literally from the sixth section of the English Statute of Frauds, and that the English courts, in construing that statute, uniformly held that a later will containing inconsistent or repugnant provisions revokes a former will wholly or in part by implication. The fact was not overlooked, for it is not a fact that the provisions of section 17 were taken literally from section 6 of the English act. Substantially they were so taken,

but with the exception that in the two cases in which the revoking instrument is referred to in section 6 it is as "some other will or codicil in writing or other writing declaring the same," while in section 14 the revoking instrument in the one reference to it is required to be "some other will, testament or codicil in writing, declaring the same," and this difference in language causes the difference in meaning of the two sections. The *Stetson case* was decided in 1903. It interpreted an act of the legislature, announced the meaning of an important statute, and declared the rule which that statute created governing a condition of facts of not infrequent occurrence concerning rights of material consequence which might affect many persons. If the statute as construed by the court was not thought to be in accord with the legislative intention or the public interest, it seems reasonable to suppose that with this decision before it the General Assembly, which has had ample opportunity in the many sessions since 1903, would have amended the statute so as to express clearly a different intention from that declared by the court. It has, however, not seen fit to do so but has left the law unchanged. We are not convinced that these decisions are erroneous, either upon reason or authority.

At common law, in the absence of the Statute of Frauds, a will, as we have seen, might be expressly revoked by the oral declaration of the testator. A revocation might also be brought about by implication of law, from changes in the circumstances of the testator raising a presumption of a·change of intention on the ground of the alteration. The changes of circumstances which might produce a revocation of a will were changes in the testator's family, as marriage or the birth of children, or in his estate, as by a conveyance or mortgage. Where a testator, having executed a will, made a later will disposing of his property in an inconsistent manner, there was also a revocation by implication. Statutes in England, and in nearly if not quite all the States of the Union, have been enacted governing the

revocation of wills. All of them, with very few exceptions, include among the methods of revoking a will, "some other will or codicil or some other writing declaring the same," expressed in substantially those words. Those statutes provide that no will shall be revoked except by one of several methods, namely, (1) by another will; (2) by a codicil; (3) by some other writing declaring the revocation; (4) by one of the other methods named. Accordingly, the decisions of those States agree in the declaration that a subsequent will which makes a disposition of the testator's property inconsistent with the provisions of the former will revokes the earlier will without any express words of revocation. The words "declaring the same" are limited to the "other writing," only, and do not extend to the "other will or codicil." (*Neff's Appeal,* 48 Pa. St. 501; *Rudy* v. *Ulrich,* 69 id. 177; *Simmons* v. *Simmons,* 26 Barb. 68.) The same construction is declared in 28 Halsbury's Laws of England, 564: "Voluntary revocation of a will can only be effected in one or other of the following modes, namely, (1) by another will or codicil duly executed, or (2) by some writing declaring intention to revoke the same and duly executed as a will, or (3) by burning, tearing," etc. The English decisions are not applicable to our statute, for the English statute differs from ours in the vital fact that it does not require a revocation by a subsequent will to be by a will declaring the same while our statute does so require, and the English statute does authorize a revocation by "some other writing declaring the same" while our statute does not. (*Stetson* v. *Stetson, supra.*) The same statement is true of the great majority of the American decisions for the same reason. Their statutes are in the same terms as the English statute, and the decisions cited from these States have therefore no application.

The statute of Illinois is one of the exceptional statutes which do not permit the revocation of a will by any other writing, no matter how formal, but only "by some other

will, testament or codicil in writing declaring the same." Therefore the decisions of those States which expressly authorize a revocation by another will without requiring a declaration of revocation are not applicable to our statute. "Declaring the same" must have been used to add something to the meaning intended. When used in a statute in connection with "some other writing" the phrase means expressing, announcing or proclaiming a revocation. When used in our statute in connection with "some other will, testament or codicil in writing" it can have no other meaning.

Section 17 of our act in regard to wills recognizes in substantially the same language as section 6 of the English Statute of Frauds the same five methods for the express revocation of a will, except that our statute does not permit a revocation by any other instrument than some other will, testament or codicil, and requires such will, testament or codicil to declare the revocation. These statutes prescribe formalities only for revocation by acts of direct and express revocation manifest on the will or other writing, and do not affect other classes of revocation by implication or operation of law arising from inconsistent circumstances not within the provisions of the statute but leave them to be determined upon general principles of law. (Page on Wills, sec. 244; 1 Underhill on Wills, sec. 221; 1 Alexander on Wills, sec. 533; *Christopher* v. *Christopher,* Dick. 445; *Doe* v. *Lancashire,* 5 T. R. 49; *Garrett* v. *Dabney, 27* Miss. 335.) In Page on Wills the methods of revocation are classified into those by which the will is revoked by the actual intention of the testator, accompanied by the required legal formalities, as the doing of some act manifest on the will itself or the execution of a later will, codicil or other instrument, and those by which the will is revoked by operation of law, without reference to the intention of the testator. (Sec. 245.) These provisions of the Statute of Frauds were in force in England from 1678 to 1837 but did not affect the revo-

cation of wills by implication or operation of law, for during this whole period the courts recognized the doctrine of the revocation of wills by implication, from changes in the condition of the testator's estate or his family or the execution of a subsequent will having inconsistent provisions. (1 Jarman on Wills, chap. 7.)

After the passage of the act of 1829 the case of *Tyler* v. *Tyler,* 19 Ill. 151, brought before this court the question of the revocation of a will by implication or operation of law because of the marriage of the testator, and it was decided that marriage, alone, without the birth of issue, revoked the prior will of a testator which disposed of his entire estate without making provision in contemplation of the relations arising out of the marriage, in the absence of facts subsequent to the marriage showing an intention to die testate. The court referred to the English Statute of Frauds as containing substantially the same provisions in relation to the revocation of wills as our statute and to the English decisions which have uniformly held that marriage and the birth of a child revoked a will by operation of law. The rule adopted by this court, while contrary to the English rule in holding the will revoked by marriage, alone, recognized the reason of that rule, and was founded on our statute making the wife heir to the husband where there is no child or descendant. The case was followed in subsequent decisions, and in 1872 by legislative enactment it was declared that a marriage should be deemed a revocation of a prior will. *Ford* v. *Greenawalt,* 292 Ill. 121.

In *Phillippe* v. *Clevenger,* 239 Ill. 117, a testator having executed a will devising a tract of land to his daughter afterward conveyed it to her, and still later purchased it from her, received a conveyance of it and died owning the property. It was held that the conveyance of the land revoked the devise. The court, citing *Tyler* v. *Tyler, supra,* and later cases, held that the doctrine of the revocation of a will by implication was not abrogated by the statute, but

that the statute applied only where there is an express intention on the part of the testator to revoke his will.

The testator plainly declared the instrument of 1907 to be his last will and testament and manifestly intended the final disposition of his property to be governed by its terms. The law, however, has provided the only method by which the owner of property may direct its use and disposition after his death. He may dispose of it by a will executed and proved in àll respects in accordance with the Statute of Wills. Having once made a will he may change its provisions by a codicil. A codicil does not revoke a will to which it is an addition or amendment or appendix. It re-publishes the will and the two are to be construed together as a single instrument. (*Meckel* v. *Johnson,* 231 Ill. 540; *Wardner* v. *Baptist Memorial Board,* 232 id. 606; *Terhune* v. *Commercial Safe Deposit Co.* 245 id. 622.) The effect of a codicil is to bring the will down to the date of the codicil. (*Neff's Appeal, supra.*) The testator may revoke his will by any of the methods mentioned in the statute, but not otherwise. It may be revoked by implication or operation of law, by acts of the testator inconsistent with it changing the condition of his family or his estate, but not by the mere indication of an intention, however express or however plain. It cannot be revoked by implication from the making of an inconsistent will. The implication of a revocation by an inconsistent will is destroyed by the statute providing that only a will which declares a revocation shall revoke a prior will. No intention to revoke a will and no act designed to effect such revocation will have that effect unless the testator has adopted one of the methods mentioned in the statute. (*Bohleber* v. *Rebstock,* 255 Ill. 53.) If the method adopted is by another will, the latter must itself declare the revocation of the prior will.

In our opinion the judgment should be reversed.