(No. 68199.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. WILLIAM F. GERSCH, Appellant.

*Opinion filed March 22, 1990.*

MILLER, J., specially concurring.

Frederick F. Cohn, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant, William F. Gersch, was indicted for the murder of his wife, Gwendolyn Gersch. Prior to trial, defendant expressly waived his right to a jury and requested a bench trial. The State opposed defendant's request and asserted its statutory right to a jury trial under section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—1). The trial court granted the State's motion for a trial by jury. Following the trial in the circuit court of Cook County, the jury found defendant guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and guilty of concealing a homicidal death (Ill. Rev. Stat. 1985, ch. 38, par. 9—3.1). The court sentenced defendant to concurrent terms of imprisonment—23 years for murder and three years for concealment of a homicidal death.

While defendant's case was pending on review, this court held section 115—1 unconstitutional in *People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209. After defendant had filed an appeal in the appellate court, this court assumed jurisdiction over the cause by granting the

State's motion pursuant to Supreme Court Rule 302(b) (107 Ill. 2d R. 302(b)).

## FACTS

Defendant fatally shot his wife on the evening of February 27, 1987. Defendant testified at trial that his marriage had long been plagued by what he characterized as his wife's incessant nagging. He also stated that while he had never struck his wife, she would often aggravate him by hitting him in the head during their many arguments.

Defendant testified that on the night of February 27, 1987, his wife was haranguing him regarding his inability to find meaningful employment, their family problems, and his drinking. When defendant told her to stop nagging, she threw a hairbrush at him, striking him in the head. He threw it back. She then grabbed the brush and used it to strike defendant in the face. As she came at him a second time, defendant testified, he started to "see spots," "lost control," reached for a nearby gun, and shot her. The State presented evidence that showed Mrs. Gersch sustained three gunshot wounds.

Defendant disposed of the body by leaving it beside a desolate road. The next day, he reported his wife missing. The authorities, however, had already found the body. When confronted with the evidence, defendant confessed to shooting his wife.

Prior to the trial, defense counsel had notified the State that defendant might present an insanity defense. This defense was based on a psychologist's opinion that the defendant was legally insane at the time of the shooting. At this same time, defendant asserted his wish to waive his right to a jury trial. The trial court denied defendant's request for a bench trial when the State demanded a jury trial under section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38,

par. 115—1) (section 115—1). In arguments before this court, defense counsel explained that defendant sensed that a jury would not be sympathetic to his trial strategy. Therefore, he withdrew his affirmative defense of insanity.

The jury found defendant guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and concealing a homicidal death (Ill. Rev. Stat. 1985, ch. 38, par. 9—3.1). On October 14, 1988, following the denial of defendant's posttrial motions and a hearing in aggravation and mitigation, the trial court sentenced defendant to 23 years' imprisonment for murder and three years' imprisonment for concealing a homicidal death, both sentences to run concurrently.

## THE *JOYCE* DECISION

In *People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 222, we held that section 115—1 was unconstitutional. Section 115—1 provided the State with the right to a jury in certain criminal trials. See Ill. Rev. Stat. 1987, ch. 38, par. 115—1 (including first degree murder, Class X felonies, criminal sexual assault, and felony violations of two statutes designed to prohibit the sale and use of illicit drugs).

*Joyce* consolidated several cases which involved defendants situated similarly to defendant in the case at bar. Each *Joyce* defendant had been indicted for a drug-related offense and had submitted jury waivers. The State indicated that it would not waive a trial by jury. The trial judge, however, deviated from the express language of section 115—1 and denied the State's request for a jury trial. The State then petitioned this court to compel the judge to expunge the orders which allowed the defendants' jury waivers. *Joyce*, 126 Ill. 2d at 211.

In its analysis in *Joyce*, this court first noted that the right to a trial by jury is guaranteed by both the Federal

and State Constitutions. However, this court also observed that Federal constitutional law permits a statute that requires consent by the government to a jury waiver. (*Joyce*, 126 Ill. 2d at 213, citing *Singer v. United States* (1965), 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783 (upholding Federal Rule of Criminal Procedure 23(a), which is similar to section 115—1).) The court therefore determined that section 115—1 would survive an attack based upon Federal constitutional principles.

Despite this, the court did not limit its analysis of section 115—1 to Federal constitutional law. If the language of our State constitution, or the debates or committee reports from the constitutional convention, indicates that a provision of our constitution is intended to be construed differently from similar provisions of the Federal Constitution, then this court should not be limited by the construction placed on the Federal constitutional provisions. (*Joyce*, 126 Ill. 2d at 213.) The court carefully analyzed the provisions of our State constitution dealing with the right to a jury trial. It also examined the history of those provisions, along with all the information which might lead it to ascertain the intent of the drafters of the constitution, including the debates and committee reports as well as the common law interpretation of the right to a jury trial as embodied in decisions of this court which the debates reveal the drafters intended to adopt as constitutional principles. (See *Joyce*, 126 Ill. 2d at 213-22.) Basing its decision solely on Illinois constitutional principles, the court held that section 115—1 was unconstitutional and that only a defendant has a right to a jury trial. *Joyce*, 126 Ill. 2d at 222.

## ANALYSIS

The crux of defendant's argument on appeal to this court is that he was denied his constitutional right to a bench trial. The issue before us, therefore, is whether we

should retroactively apply the decision in *Joyce*, which held section 115—1 unconstitutional, to defendant's convictions.

In *People v. Manuel* (1983), 94 Ill. 2d 242, 244-45, which neither party in the case at bar cited to us, this court stated that "[w]hen a statute is held unconstitutional in its entirety, it is void *ab initio*." In other words, " '[a]n invalid law is no law at all.' " (*Van Driel Drug Store, Inc. v. Mahin* (1970), 47 Ill. 2d 378, 381, quoting *People ex rel. Barrett v. Sbarbaro* (1944), 386 Ill. 581, 590; see generally 16 Am. Jur. 2d *Constitutional Law* §256 (1979).) The effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment. *Mahin*, 47 Ill. 2d at 381; *Sbarbaro*, 386 Ill. at 590.

Prior to its July 1987 amendment effective date, section 115—1 stated that "[a]ll prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury or the court when a jury is waived by the defendant in open court." (Ill. Rev. Stat. 1985, ch. 38, par. 115—1.) This version of section 115—1 would withstand scrutiny under the sections of the Illinois Constitution that deal with the right to a jury trial, because the express language of the statute gives the defendant the right to waive a jury, while giving no such parallel right to the State. (See *Joyce*, 126 Ill. 2d at 213-22.) The preamendment version of section 115—1 would also have been valid under the common law in effect at the time the 1970 Illinois Constitution was adopted, which this court determined the framers of the constitution intended to adopt as the meaning of the phrase "[t]he right of trial by jury as heretofore enjoyed shall remain inviolate," found in article I, section 13, of the Illinois Constitution. Ill. Const. 1970, art. I, §13; see *Joyce*, 126 Ill. 2d at 215-19.

In 1986, the General Assembly began to amend section 115—1. The first of these amendments, effected by section 6 of the Privacy of Child Victims of Criminal Sexual Offenses Act, required trial by jury in cases involving felony violations of two statutes designed to prohibit the sale and use of illicit drugs, unless both the State and the defendant waived the jury. (Pub. Act 84—1428, §6, eff. July 1, 1987.) The second amendment, effected by section 1 of "An Act to amend Section 115—1 ***," added first degree murder, criminal sexual assault, and Class X felonies to the list of offenses where a defendant, on trial, could not waive a jury without the State's assent. Pub. Act 85—463, §1, eff. Jan. 1, 1988.

Thus, when this court stated, in *Joyce*, that "[t]he statute entitled Method of Trial (Ill. Rev. Stat., 1986 Supp., ch. 38, par. 115—1 (effective July 1, 1987)) *** violates *** [the] Illinois Constitution" (*Joyce*, 126 Ill. 2d at 222), it merely declared that both the 1987- and 1988-effective amendments to section 115—1 were unconstitutional. (The reasoning of *Joyce* applies equally to the 1988-effective amendment, even though *Joyce* did not expressly hold that amendment, which directly affects the defendant, unconstitutional.) This left the version of section 115—1 in force as it existed prior to July 1987. (*Sbarbaro*, 386 Ill. at 584, 590, 593.) Therefore, the action of the trial court which denied defendant the right to waive the jury in the case at bar violated the version of section 115—1 that was valid at the time of defendant's trial.

The *ab initio* rule of *Manuel* is equally applicable to the case at bar. Both the 1987- and 1988-effective amendments to section 115—1 violate the Illinois Constitution. Both amendments were accomplished by separate statutes which, as far as they amended section 115—1,

this court effectively held unconstitutional in *Joyce*.[1] Therefore, both statutes, insofar as they affected section 115—1, were invalid, and we must interpret section 115—1 as if they never existed. (*Manuel*, 94 Ill. 2d at 244-45 (and cases cited therein); see 16 Am. Jur. 2d *Constitutional Law* §256 (1979).) This leads us to conclude that the denial of defendant's right to a bench trial in the case at bar requires that we retroactively apply the rule of *Joyce* to defendant's cause.

Alternatively, we note that commentators have interpreted the *Joyce* decision as striking down section 115—1 in its entirety. (See Ill. Ann. Stat., ch. 38, par. 115—1, Comment on Validity, at 3 (Smith-Hurd Supp. 1989).) However, we also note that the constitutional right to a bench trial in Illinois has existed since statehood. (See *Joyce*, 126 Ill. 2d at 213-14 (basic constitutional provisions regarding right to a jury trial have remained unchanged since 1818); *People v. Lobb* (1959), 17 Ill. 2d 287, 298 (right to trial by jury is same as it existed under common law and "as enjoyed at the time of the adoption of the respective Illinois constitutions").) The State would have us give *Joyce* only prospective application because this court arguably did not cloak the right to a bench trial with constitutional authority until the

---

[1] Under our *ab initio* analysis, *Joyce* declared the 1987 amendment void from its inception. Therefore, the 1988-effective amendment, which *Joyce* did not expressly address, added to a statute that was already void in the form the General Assembly was using at the time the 1988 amendment was enacted. The legislature was actually dealing with a "phantom"—the 1987 amendment was void, though the lawmakers did not recognize it as such. This made the specific additions to section 115—1 contained in Public Act 85—463 both illogical and syntactically impossible. This metaphysical analysis is a logical consequence of *Joyce*'s holding the 1987-effective amendment unconstitutional, and reinforces the conclusion that the 1988 amendment is void as well. However, because of *Joyce*'s holding, the 1988-effective amendment would be unconstitutional even if the General Assembly had reworded it and had purported to directly amend the pre-1987 version of section 115—1.

*Joyce* decision. However, the State's view disregards prior decisions of this court which suggested that the right to waive a jury trial is constitutionally based and is a personal right reserved for the accused's informed decision. (*People v. Spegal* (1955), 5 Ill. 2d 211, 214-22; see *Singer*, 380 U.S. at 37, 13 L. Ed. 2d at 639, 85 S. Ct. at 791.) Therefore, though we do not rule as such, even if we were to interpret *Joyce* as holding both the original version of section 115—1 and all its amendments void *ab initio*, both the language of our constitution and the common law as embodied in the precedent of this court would require that defendant should have been able to waive his right to a jury trial without interference from the State.

The State also bases its argument for exclusively prospective application of *Joyce* on our decision in *People v. Erickson* (1987), 117 Ill. 2d 271. In *Erickson*, we stated, "Judicial opinions announcing new constitutional rules applicable to criminal cases are retroactive to all cases pending on direct review at the time the new constitutional rule is declared." (*Erickson*, 117 Ill. 2d at 288, citing *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716.) We determined that two factors must be present to trigger retroactivity under *Griffith*: (1) the case to which we are asked to apply the new rule was not final or was pending on direct review when the new rule was declared, and (2) the rule we are asked to apply retroactively is of constitutional dimension. *Erickson*, 117 Ill. 2d at 289.

In determining whether the second of these factors was present in the *Erickson* defendant's case, we noted that the right which the accused sought to protect concerned a statutory, not a constitutional, right. Therefore, we held that *Griffith* was not controlling. (*Erickson*, 117 Ill. 2d at 289.) The State argues that *Joyce* similarly announced a new rule of criminal procedure which was not

of Federal constitutional dimension. The State also argues that this would then allow us to use the same test for determining retroactive application as we used in *Erickson*, which would lead to a holding that *Joyce* would only receive prospective application. See *Erickson*, 117 Ill. 2d at 288-92.

However, *Erickson* is distinguishable from the case at bar. The public policy considerations the court discussed in *Erickson* regarding the purpose of a new rule, reliance on an old rule, and the effect a new rule would have on the administration of justice have no application in considering whether the *Joyce* decision is retroactive. (See *Erickson*, 117 Ill. 2d at 290-92.) Also, while *Erickson* determined what retroactivity principles we should apply by ascertaining that the new rule of law was statutory in origin, *Erickson* did not involve an unconstitutional statute, which might have implicated a constitutionally based claim. (See *Erickson*, 117 Ill. 2d at 311 (Simon, J., dissenting); *Lego v. Illinois* (1988), 488 U.S. 902, 904, 102 L. Ed. 2d 240, 242, 109 S. Ct. 251, 253 (Marshall, J., dissenting from denial of *cert.*) (because *Erickson* did not involve a constitutional issue, but instead implicated a State statute, *Erickson* has been interpreted to have distinguished the *Griffith* standard on a State-Federal dichotomy, as revealed here—both of these dissenting opinions interpret *Erickson* to mean that the Illinois Supreme Court will only apply Federal retroactivity principles when the new rule in question is of Federal constitutional dimension).) Rather, the new rule the *Erickson* court considered was a court's interpretation of how to apply valid procedural rules and common law principles. (See *Erickson*, 117 Ill. 2d at 288.) This distinction between a judicial decision which changes established principles of common law and a judicial decision which declares a statute unconstitutional is

the key to understanding why we are compelled to give *Joyce* retroactive application.

The very nature of legislative actions makes retroactivity the proper course when a statute is declared unconstitutional. (See generally W. Eskridge & P. Frickey, Cases and Materials on Legislation: Statutes and the Creation of Public Policy 240-41 (1988) (hereinafter Eskridge & Frickey, Legislation).) Except for constitutional provisions, statutes have been generally treated as the supreme source of law in this country, giving the legislature preeminence in lawmaking power. (U.S. Const., art. I, §1 ("All legislative Powers" vested in Congress).) The executive can only implement and enforce these statutes (U.S. Const., art. II, §3 (the President "shall take Care that the Laws be faithfully executed")), while the courts are empowered only to interpret and apply them to specific cases and controversies (U.S. Const., art. III, §2).

This is also true of Illinois law. The legislature is formally recognized as having a superior position to that of the courts in establishing common law rules of decision. The Illinois General Assembly has the inherent power to repeal or change the common law, or do away with all or part of it. See *People v. Davis* (1953), 1 Ill. 2d 597, 600; *City of Chicago v. Nielsen* (1976), 38 Ill. App. 3d 941, 946; *Nardi v. Segal* (1967), 90 Ill. App. 2d 432, 437-38.

We contrast this pervasive power of the legislature to alter the common law with the historical view of judicial decisions that establish or alter common law principles. The development of the common law applicable in Illinois was a gradual process. When Illinois became a State, the legislature adopted the applicable general common law and most pre-1606 statutes of England, which other States had already adopted, as the rule of decision for Illinois courts. (Ill. Rev. Stat. 1987, ch. 1, par. 801; see *Lasier v. Wright* (1922), 304 Ill. 130, 135; *Bulpit v.*

*Matthews* (1893), 145 Ill. 345, 350.) These common law rules and decisions became the basis for all judicial determinations in this State.

Where this court establishes a rule of law, other courts in the State must follow it unless it can be shown that it will cause serious detriment or be prejudicial to public interests. (*Maki v. Frelk* (1968), 40 Ill. 2d 193, 196.) This principle, known as *stare decisis* (see generally *Williams v. Crickman* (1980), 81 Ill. 2d 105, 111), causes both the people and the bar of Illinois to rely on the decisions of this court without fear that the rules of law will suddenly change. (See *Chicago Title & Trust Co. v. Shellaberger* (1948), 399 Ill. 320, 343; Eskridge, *Overruling Statutory Precedents*, 76 Georgetown L.J. 1361 (1988) (hereinafter Eskridge, *Statutory Precedents*).) Only on rare occasions will courts determine that a change in the common law is needed to reflect societal changes or vindicate public interests. See *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 25 (abolishing common law rule of contributory negligence and adopting a new rule of comparative negligence); Eskridge, *Statutory Precedents*, at 1361 (*stare decisis* often must yield to growth and change).

The distinct and separate roles which the judiciary and legislature perform in determining what the common law is, and the different degree of reliance the public may place on a judicially, as opposed to a legislatively, created rule of law, are what mandate a strict adherence to the rule that unconstitutional statutes are void *ab initio*. The legislature has the inherent power to alter the common law at any time. Statutes, therefore, may sharply alter the polity and create new and unexpected rights and duties. (Eskridge & Frickey, Legislation, at 241.) The very "suddenness" of statutory law generally makes it unfair to apply it retrospectively, and this same "suddenness" ought to bear the corresponding charac-

teristic that, if the statute fails to pass constitutional muster, it dies as of its inception, rather than being void only as of the date of adjudication. See Eskridge & Frickey, Legislation, at 240-41 (the Federal Constitution contains several provisions, *e.g.*, the *ex post facto* and bill of attainder clause, and the contract clause, that restrict the legislature from enacting retroactive statutes).

Judicial decisions, on the other hand, are declarations of what the law already was (see Eskridge & Frickey, Legislation, at 241), or are incremental adjustments of the law to meet changing conditions—the evolutionary nature that is the genius of the common law (see, *e.g.*, *Alvis*, 85 Ill. 2d at 24-28 (adopting comparative negligence standard because of perceived change in societal conditions)). This allows us to consider the policy factors already discussed (see *Erickson*, 117 Ill. 2d at 290-93) in determining whether the law, as announced in a new decision, was already clear enough to those who rely on the common law to make retroactive application of the rule equitable. See also Traynor, *Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility*, 28 Hastings L.J. 533, 535 (1977) (arguing that judges "create" rather than "discover" the law, and that this often leads to courts mechanically declaring decisions as having retroactive application without considering the injustice retroactivity may produce).

The opposite is true when a statute violates the Constitution. A constitutionally repugnant enactment suddenly cuts off rights that are guaranteed to every citizen (Ill. Const. 1970, art. I, §1 ("All men *** have certain inherent and inalienable rights")), and instantaneously perverts the duties owed to those citizens. To hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right. This

would clearly offend all sense of due process under both the Federal and State Constitutions. (See *Wolff v. McDonnell* (1974), 418 U.S. 539, 557-58, 41 L. Ed. 2d 935, 952, 94 S. Ct. 2963, 2975 (due process requires that aggrieved party receive some kind of hearing); *Joint Anti-Fascist Refugee Committee v. McGrath* (1951), 341 U.S. 123, 168, 95 L. Ed. 817, 852, 71 S. Ct. 624, 646-47 (Frankfurter, J., concurring) (due process defines the constitutional limits on the enforcement of legislative and executive decisions); *Pure Oil Co. v. City of Northlake* (1956), 10 Ill. 2d 241, 245 (purpose of due process clause is to protect all citizens in their personal and property rights from arbitrary action by any person or authority); *Murphy v. Cuesta, Rey & Co.* (1942), 381 Ill. 162, 166-67 (due process requires that each citizen have protection of his day in court and the benefit of the general law).) Along with these considerations, we note that this court has expressly held that a defendant cannot be prosecuted under an unconstitutional act. *Manuel*, 94 Ill. 2d at 245, citing *People v. Meyerowitz* (1975), 61 Ill. 2d 200.

We also are duty-bound to strike down unconstitutional acts of the legislature. The Constitution of the United States and the decisions of the United States Supreme Court are the supreme law of the land, and bind every court in the land. (*People v. Loftus* (1948), 400 Ill. 432, 436.) Similarly, the State constitution is supreme within the realm of State law. (*Sutter v. People's Gas Light & Coke Co.* (1918), 284 Ill. 634, 640-41.) In cases where we determine that a statute is repugnant to the Constitution, our duty to declare the law void, in order to protect the rights which that document guarantees, is a paramount and constitutionally mandated function of our court system. *Droste v. Kerner* (1966), 34 Ill. 2d 495, 498-99 (General Assembly basically may enact any law, provided it is not inhibited by some constitutional provi-

sion); *Henson v. City of Chicago* (1953), 415 Ill. 564, 570 (judiciary has power to decide whether law is within scope of constitutional powers of legislature); *People v. Bruner* (1931), 343 Ill. 146, 158 (interpretation of statutes and determining their validity are inherently judicial functions vested in courts by Constitution); see *Marbury v. Madison* (1803), 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60, 73 ("an act of the legislature, repugnant to the constitution, is void," and "[i]t is emphatically the province and duty of the judicial department to say what the law is").

This duty to review and invalidate the unconstitutional actions of our legislature is also exhibited in the strong language of our precedents declaring the *ab initio* principle: "When a statute is held unconstitutional in its entirety, it is void *ab initio*." (*Manuel*, 94 Ill. 2d at 244-45; see *Quitman v. Chicago Transit Authority* (1952), 348 Ill. App. 481, 483.) " 'An invalid law is no law at all.' " (*Mahin*, 47 Ill. 2d at 381, quoting *Sbarbaro*, 386 Ill. at 590.) An unconstitutional law "confers no right, imposes no duty and affords no protection. It is *** as though no such law had ever been passed." (*People v. Schraeberg* (1932), 347 Ill. 392, 394; accord *People v. Clardy* (1929), 334 Ill. 160, 163.) Therefore, where a statute is violative of constitutional guarantees, we have a duty not only to declare such a legislative act void, but also to correct the wrongs wrought through such an act by holding our decision retroactive.

We must note, however, that courts have been struggling with the potentially harsh results of the *ab initio* doctrine, particularly where law enforcement officials have relied in good faith on the validity of a statute (see *Chicot County Drainage District v. Baxter State Bank* (1940), 308 U.S. 371, 374, 84 L. Ed. 329, 332-33, 60 S. Ct. 317, 318 (statute is an operative fact with consequences which must be taken into consideration); *Reich*

*v. Board of Fire & Police Commissioners* (1973), 13 Ill. App. 3d 1031, 1035 (requiring police to prejudge the constitutionality of a criminal statute before enforcing it would totally disrupt law enforcement and police discipline); 1 N. Singer, Sutherland on Statutory Construction §2.07, at 35 (Sands 4th ed. 1985) (hereinafter Sutherland); O. Field, The Effect of an Unconstitutional Statute 3 (1935) (hereinafter Field) (*ab initio* theory does not take into account that people relied on the unconstitutional act)), or where the invalidation of rules of criminal procedure would allow otherwise guilty criminals to win their freedom (see L. Tribe, American Constitutional Law §3—3, at 30 (2d ed. 1988)). Attempting to avoid these problems, courts have attempted to temper the *ab initio* doctrine's harsh results by considering the kind of factors this court used in *Erickson* to minimize unfairness. (L. Tribe, American Constitutional Law §3—3, at 30-32 (2d ed. 1988).) However, scholars have noted that in the area of criminal prosecution, the *ab initio* principle is especially appropriate. (Sutherland §2.07, at 35; Field, at 3.) Also, in cases involving criminal procedure, the United States Supreme Court has recently declared that new rules involving criminal cases must be applied retroactively to all defendants with cases pending on review at the time of the decision. (*Griffith*, 479 U.S. at 328, 93 L. Ed. 2d at 661, 107 S. Ct. at 716.) While *Griffith* is distinguishable from the case at bar in the same manner as *Erickson* (*Griffith*, 479 U.S. at 316, 93 L. Ed. 2d at 654, 107 S. Ct. at 710 (*Griffith* involved the retroactivity of a decision declaring that the use of peremptory challenges to strike members of the defendant's race from the jury established a *prima facie* case of racial discrimination, and did not involve the striking of an unconstitutional statute)), we believe the principle of treating similarly situated defendants alike (*Griffith*, 479 U.S. at 328, 93 L. Ed. 2d at 661, 107 S. Ct. at 716)

comports with our rule that no one can be prosecuted under an unconstitutional statute (*Manuel*, 94 Ill. 2d at 245), particularly after a court has declared that statute unconstitutional. We therefore can see no persuasive policy arguments for departing from the *ab initio* doctrine.

Therefore, because this court determined in *Joyce* that the 1987 and 1988 amendments to section 115—1, which gave the State the right to demand a jury trial in certain criminal cases, were unconstitutional, and because the denial of retroactive application of *Joyce* would ignore the *ab initio* rule of statutory invalidation and deprive defendant of the right to waive a jury trial, which is guaranteed by the Illinois Constitution, we hold that the decision in *Joyce* is to be applied retroactively.

We now must consider the proper remedy for the trial court's denial of defendant's constitutional right to waive a jury trial. The General Assembly has declared that a subsequent prosecution of a defendant is not barred because of former conviction in the same cause if subsequent proceedings resulted in reversal, unless the reversal determined that the defendant was not guilty. (Ill. Rev. Stat. 1987, ch. 38, par. 3—4(d)(2).) Our precedent is in agreement. (*People v. Ramirez* (1986), 114 Ill. 2d 125, 132 (general rule is that retrial is proper and does not offend principles of double jeopardy unless conviction was reversed because evidence was legally insufficient); *People v. Woodall* (1975), 61 Ill. 2d 60, 64 (further prosecution not barred if reversal does not judge defendant not guilty).) Specifically, in the decision of this court governing an accused's right to waive a jury trial which was the controlling law at the time defendant's trial took place, this court determined that the proper remedy for denial of the right to waive a jury was to reverse the conviction and remand the cause for a new trial. *Spegal*, 5 Ill. 2d at 222.

Therefore, we reverse defendant's convictions and remand the cause to the circuit court of Cook County for a new trial, with directions to conduct the trial in compliance with this court's decision in *People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209.

*Judgment reversed;*
*cause remanded with directions.*

JUSTICE MILLER, specially concurring:

I agree with the court's holding that the defendant must be granted a new trial. My reasons for reaching that conclusion are different from those relied on by the majority opinion, however, and therefore I write separately.

The defendant in the present case was originally charged with two counts of murder, one count of armed violence, and one count of concealment of a homicidal death. The charges alleged the defendant's murder of his wife during the evening of February 27, 1987. The defendant was tried by a jury in September 1988 and was found guilty of the two murder counts and of the one count of concealment of a homicidal death; the defendant was not tried on the armed violence charge.

At the time of trial, section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—1) required the State's consent to a defendant's jury waiver in certain instances. Section 115—1 provided:

> "All prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives such jury trial in writing or, in a criminal prosecution where the offense charged is first degree murder, a Class X felony, criminal sexual assault or a felony violation of the Cannabis Control Act or the Illinois Controlled Substances Act both the State and the defendant waive such jury trial in writing."

As the majority notes, the requirement of prosecutorial consent to a defendant's jury waiver in the instances specified was the product of two amendments to section 115—1. The requirement originally was limited to cases in which the only offenses charged were felony violations of the Cannabis Control Act or the Illinois Controlled Substances Act. (See Ill. Rev. Stat., 1986 Supp., ch. 38, par. 115—1.) Effective January 1, 1988, Public Act 85—463 amended section 115—1 by adding first degree murder, Class X felonies, and criminal sexual assault to the list of prosecutions where the State could insist on a jury trial. At the same time, the legislature deleted language limiting application of the statute to cases in which the only offenses charged were those specified in the statute. It was under this version of section 115—1 that the present defendant was tried.

On its face, the requirement of prosecutorial consent contained in section 115—1 is limited to cases in which at least one of the enumerated offenses, or a felony of the class specified, is charged. It is not apparent that the statute was applicable in this case. The defendant contends that he was not tried for an offense or class of offense listed in the provision. The defendant stood trial on charges of murder and concealment of a homicidal death, neither of which, according to the defendant, is an offense or is included in a class of offense specified in section 115—1. The only response made by the State in this regard is that the offense of murder differs from the offense of first degree murder in name only, and that the two crimes are otherwise identical. The State therefore would construe the statutory reference to the current offense of first degree murder as including the former offense of murder. That argument, however, cannot be reconciled with our decision in *People v. Shumpert* (1989), 126 Ill. 2d 344, which held that application of the statute

defining the offense of first-degree murder to acts occurring before that provision's effective date would violate the constitutional prohibition against *ex post facto* legislation. I would note that although the defendant was also originally indicted on a Class X charge of armed violence, he did not go to trial on that offense, and the State makes no effort to use that charge as the basis for applying section 115—1 in the present case.

Only if we conclude that the prosecutorial consent provision of section 115—1 is applicable to the present case does it then become necessary to determine the effect to be accorded to this court's decision in *People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209. *Joyce* invalidated, on State constitutional grounds, the original amendment that added to section 115—1 the requirement of prosecutorial consent to jury waivers by defendants charged with certain drug felonies. The present defendant challenged in the circuit court the constitutionality of the statute and sought to avoid its application to his case. Given the rationale of this court's decision in *Joyce*, it is readily apparent that the later amendment to section 115—1 enlarging the scope of the consent requirement must also fall. Thus, it should be enough in the present case to hold that the subsequent amendment was similarly invalid and that the defendant, tried under that regime, must be tried again.

The majority nevertheless concludes that the statutory language invalidated by the court's decision in *Joyce* must be considered void *ab initio*, and thus of no effect from its inception. As the majority acknowledges, the theory of *ab initio* invalidity may produce harsh effects, ignoring as it does the justified reliance that society has quite properly reposed in a previously unchallenged legislative enactment. (See 1 N. Singer, Sutherland on Statutory Construction §2.07, at 34-35 (Sands 4th ed. 1985) ("Based on superficial analogies, there are cases, mostly

older ones, in which it has been asserted that in legal contemplation an unconstitutional act is as inoperative as if it had never been passed. However difficult it may have been to deny that an unconstitutional act had produced actual results as a matter of fact, many courts have felt compelled to declare that such an act has been void ab initio, from which it was thought to follow that such an act could not be allowed to have any legal effects").) To say that a statute, eventually declared unconstitutional, had absolutely no legal effect, as the majority asserts, simply cannot be accepted at face value.

Moreover, the majority transmutes the notion of *ab initio* invalidity into a constitutional requirement, declaring that due process commands that a decision invalidating a statute on constitutional grounds be accorded complete retroactivity. (135 Ill. 2d at 397-98.) Such an interpretation dramatically alters the traditional view regarding the potential effects of such decisions. Discussing the significance of a declaration of statutory invalidity, the Supreme Court has stated:

> "The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. [Citations.] It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,— with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted

upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified." *Chicot County Drainage District v. Baxter State Bank* (1940), 308 U.S. 371, 374, 84 L. Ed. 329, 332-33, 60 S. Ct. 317, 318-19.

Rather than automatically conclude that all unconstitutional statutes must be deemed to have been void from their inception, the more appropriate course, it seems to me, requires that we determine in an individual case or category of cases the effect that should be accorded a subsequent declaration of statutory invalidity. When, for example, a statute defining a criminal offense is declared unconstitutional, the *ab initio* principle often is invoked. (See, *e.g., People v. Zeisler* (1988), 125 Ill. 2d 42; *People v. Manuel* (1983), 94 Ill. 2d 242; *People v. Sarelli* (1973), 55 Ill. 2d 169, 170-71.) This is not to say, however, that such effect must be the inevitable consequence in every case. The majority's broad-ranging discussion resolves nothing, except this appeal, and serves only as a herald of further problems.