NO. 4-08-0682                    Filed 4/16/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|      Plaintiff-Appellee, | ) | Circuit Court of |
|      v. | ) | Vermilion County |
| TA'RHON COLEMAN, | ) | No. 07CF249 |
|      Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE POPE delivered the opinion of the court:

In April 2007, the State charged defendant, Ta'Rhon
Coleman (born June 11, 1990), with one count of armed robbery
with a firearm (720 ILCS 5/18-2(a)(2) (West 2006)).  In an
amended information filed in November 2007, the State charged
defendant with armed robbery with a firearm (720 ILCS 5/18-
2(a)(2) (West 2006)), armed robbery with a dangerous weapon (720
ILCS 5/18-2(a)(1) (West 2006)), and armed violence with a cate-
gory I weapon predicated on the offense of robbery (armed vio-
lence) (720 ILCS 5/33A-2(a) (West 2006)).

In April 2008, a jury found defendant guilty of armed
robbery with a firearm and armed violence.  In September 2008,
the trial court sentenced defendant to 15 years' imprisonment on
his conviction for armed violence.  Defendant appeals, arguing
(1) his trial counsel was ineffective for eliciting testimony

from defendant regarding his prior juvenile conviction, and (2) the sentence for armed violence predicated on robbery as compared to the sentence for armed robbery with a firearm violates the proportionate-penalties clause of the Illinois Constitution. We vacate defendant's sentence and remand.

## I. BACKGROUND

At approximately 8 p.m. on March 13, 2006, Pizza Hut deliveryman Kim Willis arrived at 12 South State Street in Danville to deliver two pizzas. Two teenage boys were waiting outside the house when Willis arrived. As Willis approached the house with the pizzas and a soda, one of the boys walked up to him and produced a gun. The boy demanded Willis's wallet, which contained approximately $50. Willis handed him the wallet, and the boy told him to get back in the car and drive away. The pizza boxes and soda were left scattered on the sidewalk in front of the house.

Willis returned to his car but tried to keep an eye on the two boys as they ran away from the scene. He stopped watching them after one of the boys turned around and pointed the gun at him. Willis called the Pizza Hut and the police as he drove to a nearby gas station. Less than 10 minutes later, he returned to the house to meet police.

Officer Keith Garrett was a City of Danville police officer who interviewed Willis at the scene of the robbery.

According to Officer Garrett, Willis described the boy with the gun as approximately six feet two inches with an athletic build and wearing a puffy coat. The other boy was approximately six feet tall and was also wearing a puffy down coat. Willis could not remember if the subject with the gun was wearing glasses.

Approximately one year after the robbery, the crime lab notified Officer Garrett of a fingerprint match on one of the pizza boxes at the scene of Willis's robbery. Officer Garrett went to Willis's residence with a photo array of six pictures, including a picture of defendant. Defendant was not wearing glasses in the picture. Willis did not identify defendant from the photo array. In April 2007, defendant was arrested and charged with armed robbery with a firearm. Additional charges were added later, as stated above.

At his April 2008 trial, defendant testified he is six feet three inches and weighs approximately 180 pounds. He has worn glasses since he was a child, and he is unable to drive without them. On the night of the robbery, defendant borrowed a friend's car and drove to 12 South State Street, the scene of the robbery, where his old friend Michael Rettinger had previously lived. Defendant had not seen Rettinger since 2005 and did not know whether Rettinger still lived there. Two police officers testified the house had been vacated by the Rettingers between two and six months prior to the robbery and was vacant on the

- 3 -

evening in question.

According to defendant, when he arrived at the house, he saw two pizza boxes next to the front steps. He picked them up and approached the dark house. When no one answered the door, he set the boxes down and left. Defendant estimated he was at the house for less than one minute.

At defendant's trial, the following exchange occurred between defendant and defense counsel:

"[COUNSEL]: Now, Ta'Rhon, you've been in trouble before?

[DEFENDANT]: Yes.

[COUNSEL]: Do you have a criminal record?

[DEFENDANT]: Yes.

[COUNSEL]: One of the cases that you had was a robbery; is that correct?

[DEFENDANT]: Yes.

[COUNSEL]: That was back in '04, '05?

[DEFENDANT]: Yes.

[COUNSEL]: And you have served time in the Department of Corrections [(DOC)]?

[DEFENDANT]: Yes.

[COUNSEL]: All right. I just want to make sure the jury all understands that."

The State asked the following questions on cross-examination:

"[THE STATE]: You say you paroled in February of '05, right?

[DEFENDANT]: Yes.

[THE STATE]: So you had been out for a good 14 months at the time March 13th rolls around?

[DEFENDANT]: Out of [DOC] I got incarcerated again from November, 2005, to the middle of January, 2006, and I got released.

[THE STATE]: But you were out before November of 2005 for a good several months?

[DEFENDANT]: No. I was back incarcerated in 2005 in November. I got out in January."

On redirect, the jury learned defendant was also incarcerated in February 2007. In closing argument, both the State and defense counsel mentioned to the jury that defendant had been in trouble before. The jury found defendant guilty of armed robbery and armed violence, and defendant was sentenced as stated.

This appeal followed.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

Defendant argues his trial counsel was ineffective for eliciting testimony from defendant regarding his prior juvenile conviction.

To show ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984), a defendant must show

> "(1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant in that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." People v. Irvine, 379 Ill. App. 3d 116, 129, 882 N.E.2d 1124, 1136 (2008).

Our supreme court provides, under the first prong of the test, the defendant must show trial counsel's representation "'fell below an objective standard of reasonableness.'" People v. Harris, 206 Ill. 2d 1, 16, 794 N.E.2d 314, 325 (2002), quoting Strickland, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. At 2064. The defendant must also satisfy the second prong by demonstrating he was prejudiced by counsel's deficient performance. Harris, 206 Ill. 2d at 16, 794 N.E.2d at 325. Prejudice is established where a defendant has shown the outcome of the

- 6 -

proceeding would have been different but for counsel's perfor-mance. Harris, 206 Ill. 2d at 16, 794 N.E.2d at 325.

Here, defendant argues counsel was ineffective for eliciting testimony from defendant regarding his prior juvenile conviction. Citing People v. Kerns, 229 Ill. App. 3d 938, 940, 595 N.E.2d 207, 208 (1992), defendant argues Federal Rule of Evidence 609(d) (adopted by our supreme court pursuant to People v. Montgomery, 47 Ill. 2d 510, 519, 268 N.E.2d 695, 700 (1971)), prohibits the admission of juvenile adjudications for impeachment when the witness is the accused. When Montgomery was decided in 1971, Rule 609(d) provided:

> "'Evidence of juvenile adjudications is generally not admissible under this rule. The judge may, however, allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the judge is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or inno-cence.'" Montgomery, 47 Ill. 2d at 517, 268 N.E.2d at 699.

In Kerns, 229 Ill. App. 3d at 941, 595 N.E.2d at 208, this court specifically held the admissibility of a juvenile

adjudication is governed by Federal Rule 609(d) as adopted in
Montgomery.  In Kerns, the trial court admitted the defendant's
juvenile adjudication for burglary during the State's cross-
examination of the defendant.  The version of section 5-150(1)(c)
of the Juvenile Court Act of 1987 then in effect (Ill. Rev. Stat.
1989, ch. 37, par. 801-10(1)(c)) provided as follows:

> "'(1) Evidence and adjudications in
> proceedings under this Act shall be admissi-
> ble:
>
> * * *
>
> (c) in proceedings under this Act or in
> criminal proceedings in which anyone who has
> been adjudicated delinquent under [s]ection
> 5-3 is to be a witness, and then only for
> purposes of impeachment and pursuant to the
> rules of evidence for criminal trials[.]'"
> Kerns, 229 Ill. App. 3d at 940, 595 N.E.2d at
> 208.

Thus when Kerns was decided, the statute purported to allow the
admission of adjudications of witnesses, and did not specifically
include defendants.  See People v. Massie, 137 Ill. App. 3d 723,
730, 484 N.E.2d 1213, 1218 (1985); People v. Bunch, 159 Ill. App.
3d 494, 513, 512 N.E.2d 748, 761 (1987).  Under the latest
version, now found in section 5-150(1)(c) of the Juvenile Court

- 8 -

Act of 1987 (705 ILCS 405/5-150(1)(c) (West 2008)), a witness, _including_ the minor or defendant if he testifies, may be impeached with a juvenile adjudication.  Both versions of the statute contained the following condition: "and then only for purposes of impeachment and pursuant to the rules of evidence for criminal trials."  Ill. Rev. Stat. 1989, ch. 37, par. 801-10(1)(c); 705 ILCS 405/5-150(1)(c) (West 2008).

This court in _Kerns_ disavowed a prior Fourth District case which held a previous version of section 5-150(1)(c) supplanted Rule 609(d) (see _People v. McClendon_, 146 Ill. App. 3d 1004, 1011, 497 N.E.2d 849, 853 (1986)), and specifically found the statute did not supplant Rule 609(d).  _Kerns_, 229 Ill. App. 3d at 940-41, 595 N.E.2d at 208-09.  In fact, the statute and the rule, as adopted by our supreme court in _Montgomery_, can be reconciled when the statutory language "pursuant to the rules of evidence for criminal trials" is considered.  In other words, the legislature has said a defendant who chooses to testify may be impeached with a juvenile adjudication but has conditioned the use of such impeachment on the rules of evidence for criminal trials.

Our supreme court has adopted Rule 609 as a rule of evidence to be used by the trial courts.  Rule 609 does not permit impeachment of a defendant with a juvenile adjudication. Thus, as we sit here today, a juvenile adjudication of a defen-

dant who testifies is normally not admissible.  But see People v. Harris, 231 Ill. 2d 582, 591, 901 N.E.2d 367, 372 (2008) (allowing impeachment where the defendant's testimony concerning his prior criminal history was misleading).  Thus defendant argues his lawyer, who was retained to represent the defendant, was ineffective for bringing defendant's prior adjudication to the jury's attention.  However, a review of the entire trial transcript reveals the following.

The State's evidence included the testimony showing defendant's fingerprint was identified on the pizza box.  In order to lay the foundation for the fingerprint expert's testimony, the State called a correctional officer to testify to the known fingerprints of the defendant.  These known fingerprints were transported to the crime lab for identification.  The State's fingerprint expert testified she found latent prints on the pizza box suitable for comparison.  After determining they did not belong to the pizza driver, she ran an automated-fingerprint-identification-system (AFIS) search.  She obtained a "hit," indicating the prints belonged to the defendant.  After receiving known fingerprint cards of the defendant, the State's expert made a comparison to the prints on the pizza box and determined they in fact belonged to the defendant.

Defense counsel clearly was aware of the State's evidence.  In opening statements, defendant's lawyer admitted

defendant was at the residence where the robbery occurred and he admitted defendant did, in fact, touch the pizza boxes. The defendant took the position he was at the location of the robbery for about one minute, touched the pizza box, and left. He claimed he was not present when the robbery happened. Often-times, defense counsel will strategically admit facts on which the State's evidence is conclusive in order to gain credibility with the jury. In other words, when a forensic lab expert, with no personal interest in the case, definitively identifies latent prints as a defendant's fingerprints, there is no reason to argue otherwise. Thus it was not ineffective, nor does defendant so contend, for counsel to admit to the jury what the evidence would clearly show--defendant touched the pizza boxes.

Moreover, defense counsel knew part of the State's foundation for the admissibility of the fingerprint expert's testimony would be the actual, known prints of defendant, which were on arrest cards. Knowing this, it was not objectively unreasonable for counsel to ask defendant whether he had a criminal record or to note the defendant had been in trouble before. The jury was going to surmise this from the arrest cards anyway. By bringing it out through the defendant himself, counsel hoped to bolster defendant's credibility with the jury when he denied committing the robbery later in his testimony. This is borne out by defense counsel's closing argument when he

stated to the jury, "Mr. Coleman was right up front.  He told you, he's in trouble."  From this argument, counsel was hoping the jury would infer, since defendant was honest about his prior troubles, he must be telling the truth about his noninvolvement with the robbery.  This was not a performance which falls below an objective standard of reasonableness, and thus counsel was not ineffective.

Lastly, the State's questions of defendant regarding his release from DOC were limited and when viewed in the context of the trial, not improper.  When defendant testified, apparently he felt it necessary to explain why he would not have known his friend, Michael Rettinger, no longer lived at 12 South State.  Defendant stated, "[a]t the time, before I got locked up, my friend Michael Rettinger was living at the residence that the robbery occurred at."  In other words, his going to a long-vacant house to see his friend is explained by his absence from the community while in DOC.  Since defendant offered this testimony, the State was allowed to cross-examine defendant about it.  We note the State's questioning on this topic was not extensive.

## B. Defendant's Sentence

Defendant argues the sentence for armed violence predicated on robbery as compared to the sentence for armed robbery with a firearm violates the proportionate-penalties clause of the Illinois Constitution.  As such, defendant asks

- 12 -

this court to vacate his conviction for armed violence and remand for entry of judgment on his conviction for armed robbery with a firearm, which carries a lesser penalty.  Defendant did not object at sentencing nor did he file a posttrial motion on this issue.

We review the trial court's application of a statute <u>de novo</u>.  <u>People v. Cornelius</u>, 213 Ill. 2d 178, 188, 821 N.E.2d 288, 295 (2004).  To overcome the presumption that statutes are constitutional, the party challenging the statute must show it violates the constitution.  <u>People v. Sharpe</u>, 216 Ill. 2d 481, 487, 839 N.E.2d 492, 497 (2005).  We defer to the legislature on sentencing issues as it is institutionally more capable of fashioning appropriate sentences.  See <u>People v. Hill</u>, 199 Ill. 2d 440, 454, 771 N.E.2d 374, 383 (2002).

The Criminal Code of 1961 (Code) provides an individual commits armed robbery when he violates section 18-1 of the Code and "carries on or about his or her person or is otherwise armed with a firearm."  720 ILCS 5/18-2(a)(2) (West 2006).  As a Class X felony, armed robbery with a firearm carries a sentencing range of 6 to 30 years.  730 ILCS 5/5-8-1(a)(3) (West 2006).  When an offender uses or possesses a firearm during the commission of the crime, as in the present case, the trial court must apply a mandatory 15-year enhancement, bringing the sentencing range for armed robbery with a firearm to 21 to 45 years.  720 ILCS 5/18-

- 13 -

2(b) (West 2006).

The sentencing provision for armed violence is provided in section 33A-3(a) of the Code as follows:  "Violation of [s]ection 33A-2(a) with a Category I weapon is a Class X felony for which the defendant shall be sentenced to a minimum term of imprisonment of 15 years."  720 ILCS 5/33A-3(a) (West 2006).  A handgun is a category I weapon.  720 ILCS 5/33A-1(c)(1) (West 2006).

Article I, section 11, of the Illinois Constitution of 1970 provides "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."  Ill. Const. 1970, art. I, §11.  Where offenses with identical elements carry different sentences, the proportionate-penalties clause is violated.  Sharpe, 216 Ill. 2d at 487, 839 N.E.2d at 498.  An unconstitutional statute is void ab initio, i.e., "'"[a]n invalid law is no law at all."'"  People v. Gersch, 135 Ill. 2d 384, 390, 553 N.E.2d 281, 283 (1990), quoting Van Driel Drug Store, Inc. v. Mahin, 47 Ill. 2d 378, 381, 265 N.E.2d 659, 661 (1970), quoting People ex rel. Barrett v. Sbarbaro, 386 Ill. 581, 590, 54 N.E.2d 559, 562 (1944).  The effect of declaring a statute unconstitutional is to revert to the statute as it existed before the amendment.  Gersch, 135 Ill. 2d at 390, 553 N.E.2d at 283.  A reviewing court has a duty to vacate void orders.  People v.

- 14 -

Brown, 225 Ill. 2d 188, 195, 866 N.E.2d 1163, 1167 (2007).

Here, defendant committed armed robbery with a firearm and armed violence in March 2006.  In 1996, our supreme court held armed robbery with a dangerous weapon (sentencing range of 6 to 30 years' imprisonment) and armed violence with a dangerous weapon (sentencing range of 15 to 30 years' imprisonment) were substantively identical offenses with different penalties. People v. Lewis, 175 Ill. 2d 412, 418, 677 N.E.2d 830, 832-33 (1996).  As such, the Lewis court held the penalty for armed violence predicated on armed robbery violated the proportionate-penalties clause.  Lewis, 175 Ill. 2d at 418, 677 N.E.2d at 833. In 2000, the Illinois legislature enacted Public Act 91-404 "to deter the use of firearms in the commission of a felony offense." Pub. Act 91-404, §5, eff. January 1, 2000 (1999 Ill. Legis. Serv. 4026, 4032 (West)).  The act amended the sentencing portion of the armed-robbery statute to provide for 15/20/25 to life in-creases in sentences for the four varieties of armed robbery. Pub. Act 91-404, §5, eff. January 1, 2000 (1999 Ill. Legis. Serv. 4026, 4031 (West)).  The effect of this amendment was to increase the minimum sentence for armed robbery, while armed with a firearm, to 21 years.

In People v. Hauschild, 226 Ill. 2d 63, 871 N.E.2d 1 (2007), our supreme court revisited the proportionate-penalties issue raised by Public Act 91-404.  There, the trial court

refused to enhance the defendant's armed-robbery sentence on the grounds it violated the proportionate-penalties clause. Hauschild, 226 Ill. 2d at 69, 871 N.E.2d at 4-5. Our supreme court reviewed defendant's conviction for armed robbery in light of the "lesser offense" of armed violence predicated on robbery because the evidence would have supported that conviction. Hauschild, 226 Ill. 2d at 88, 871 N.E.2d at 15. The court determined a charge of armed violence predicated on robbery had the same elements as a charge of armed robbery while armed with a firearm, but the offenses carried different penalties. Hauschild, 226 Ill. 2d at 85-86, 871 N.E.2d at 13-14. In accordance with Lewis, the court held when an amended statute violates the proportionate-penalties clause, the reviewing court should remand for resentencing under the statute as it existed before the amendment. Hauschild, 226 Ill. 2d at 88-89, 871 N.E.2d at 15.

The Code defines armed robbery as the taking of property from the person or presence of another by the use of force or the threat of imminent force while armed with a firearm. 720 ILCS 5/18-1(a), 18-2(a)(2) (West 2006). Armed violence predicated on robbery is the offense of robbery (720 ILCS 5/18-1(a) (West 2006)) while armed with a category I weapon. 720 ILCS 5/33A-1(c), 33A-2(a) (West 2006). As the elements of the two offenses are identical, the proportionate-penalties clause applies and their sentences should be identical as well.

- 16 -

*Hauschild*, 226 Ill. 2d at 86, 871 N.E.2d at 14. However, armed robbery with a firearm, with the 15-year enhancement, carries a 21- to 45-year sentence while the sentencing range for armed violence is 15 to 30 years. *Hauschild*, 226 Ill. 2d at 86, 871 N.E.2d at 14. Because the penalty for armed robbery with a firearm is more severe than the penalty for armed violence, the 15-year enhancement for armed robbery created by Public Act 91-404 violates the proportionate-penalties clause. *Hauschild*, 226 Ill. 2d at 88, 871 N.E.2d at 15.

In this case, the trial court sentenced defendant to 15 years' imprisonment for armed violence and did not sentence him on his conviction for armed robbery with a firearm. At the time of his sentencing, *Hauschild* had already determined the 15-year enhancement for armed robbery with a firearm was unconstitutional. The sentencing range for armed robbery was 6 to 30 years. However, armed violence, a crime with identical elements to armed robbery with a firearm, carries a penalty of no less than 15 years' imprisonment. As such, the armed-violence sentence violates the proportionate-penalties clause. Because the statute was void *ab initio* at the time of sentencing, defendant's sentence is void. According to *Hauschild*, the proper remedy under these circumstances is to remand for sentencing on the offense with the lesser penalty, armed robbery.

We note subsequent to defendant's commission of this

- 17 -

offense, the legislature amended the armed-violence statute in an attempt to alleviate the proportionate-penalties issue.  See Pub. Act 95-688, §4, eff. October 23, 2007 (2007 Ill. Legis. Serv. 6228, 6228-29 (West)).  The language of the new statute, <u>inter alia</u>, eliminated the charge of armed violence for a person who uses a firearm to commit robbery.  We also recognize the issue of <u>Hauschild</u>'s viability has been argued before the supreme court in People v. Kelly, No. 107832 (March 2010).  Unless and until our supreme court modifies its decision in <u>Hauschild</u>, we are bound to follow it.

### III. CONCLUSION

For the reasons stated, we vacate the trial court's 15-year sentence and remand for sentencing on defendant's armed-robbery conviction.

Sentence vacated; cause remanded for resentencing.

MYERSCOUGH, P.J., and McCULLOUGH, J., concur.